CLIFFORD N. HAYNER, Claimant, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 28833.)

Court of Claims, September 28, 1948.

*Montford C. Holley* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Frank M. Noonan* of counsel), for defendant.

GREENBERG, J.   This claim is predicated upon the appropriation of part of claimant's land by the State for the purpose of construcing State highway 5561, Gasport-Middleport, in the county of Niagara.

The State has resisted part of the claim on the ground that title to parcel 43 on map 41 was in the county of Niagara rather than in the claimant.

In 1906, the Buffalo, Lockport and Rochester Railway Company instituted condemnation proceedings in the Supreme Court, Niagara County, for the purpose of acquiring possession of the strip in question for the operation of a street surface railway and judgment was thereafter rendered on November 28, 1906, adjudging it to be entitled to take and hold the same '' for the public use hereinbefore specified ''. The order of confirmation, dated December 13, 1906, further provided that upon payment of the moneys therein specified, the railway company '' shall be entitled to enter into immediate possession of the property condemned  *   *   *   and to take and hold said property for the public use, as specified in said judgment.'' In 1904 and 1915 the railway company mortgaged its property, including the strip in question, and subsequently in foreclosure proceedings, the property was conveyed to Matson and Foster by referee's deed. Matson and Foster in turn in 1919 conveyed the property acquired by them to the Rochester, Lockport and Buffalo Railroad Corporation, which corporation succeeded the Buffalo, Lockport and Rochester Railway Company in the operation of the railway. The operation of the railway by the railroad corporation was discontinued on April 30, 1931, and the corporation was dissolved on November 22, 1937. In 1936, however, the railroad corporation deeded this strip to the County of Niagara.

Claimant claims title by virtue of a devise under the will of his grandfather, who had purchased the property in 1877, and asserts ownership of a reversionary interest, which became absolute when the use of the lands for railroad purposes ceased.

Under section 4 of the Railroad Law of 1890 (as amd. by L. 1892, ch. 676, as amd. L. 1902, ch. 504, § 1) a railroad corporation could acquire by condemnation such real estate and property as may be necessary for its construction, maintenance and accommodation in the manner provided by law, '' but the real property acquired by condemnation shall be held and used only for the purposes of the corporation during the continuance of the corporate existence.'' (Now Railroad Law, § 8. See, also, section 17 which refers to the acquisition of title to real property by railroad corporations for a '' public use ''.)

The petition, judgment and order of confirmation in the condemnation proceedings all refer to the specific purpose for which the property was to be taken and nowhere does it appear that a fee in the lands to be taken was sought. Under such recitals and the law then existing, the property was acquired

for the purposes of operating the railroad. Accordingly an easement only was acquired in the property in question, which terminated when the lands were diverted from railroad purposes and certainly when the company ceased to exist. In *Crouch* v. *State of New York* (218 App. Div. 356, 361–362) the Appellate Division, Fourth Department, held:

" The rule is that, when private property is taken in the exercise of the right of eminent domain, particularly by a private corporation, the taking is limited to the reasonable necessities of the case, to carry out the purpose for which permission to take is given, so far as the owners of the property are concerned. (*Newton* v. *City of Newton,* 188 Mass. 226; *Bradley* v. *Crane,* 201 N. Y. 14, 25.) Here, as we believe, the law did not authorize the taking of a fee of property of this nature, nor did the petitioning railroad company have intent to take such title, and would be limited by its intendment and purposes. (*Appleton* v. *City of New York,* 219 N. Y. 150, 166; *Conklin* v. *Old Colony Railroad* 154 Mass. 155.)

" We hold, therefore, that an easement only was taken in the property in question which terminated when the State through its sovereignty diverted the lands from railroad purposes and appropriated them to its own use. \* \* \* If the owner of such an easement abandons the property, sells it or devotes it to some purpose foreign to that for which it was acquired, or if it is condemned or appropriated for a new public purpose, the owner of the reversion may assert his right to possession or claim compensation. (*Heard* v. *City of Brooklyn, supra; Strong* v. *City of Brooklyn, supra; Hooker* v. *Utica & M. T. R. Co.,* 12 Wend. 371; *People* v. *Lawrence,* 54 Barb. 589, 619; *Porter* v. *International Bridge Co.,* 200 N. Y. 234; *Mechanicville & Ft. Edward R. R. Co.* v. *Fitchburg R. R. Co.,* 103 Misc. 46; affd., 190 App. Div. 887; *Harris* v. *Elliott,* 10 Pet. 25; *Newton* v. *Manufacturers' R. Co.,* 115 Fed. 781, 786; 2 Nichols Em. Dom. [2d ed.] 1418.) "

Accordingly, an award is made to the claimant in the accompanying findings based upon the difference in value of the farm, treated as a whole and including the afore-mentioned strip, prior to the appropriation and the value of said farm after the taking.