DANIEL E. CONNOLLY et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28874.)

Court of Claims, March 14, 1950.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne of counsel), for defendant.*

*Paul H. Seaman for claimants.*

RYAN, J. Claimants are the owners and in possession of a farm in the town of Royalton, Niagara County, which was acquired by deed dated March 2, 1922. At that time the Rochester, Lockport and Buffalo Railroad Corporation occupied for railroad purposes a strip of land across the farm which had been acquired by condemnation in 1906. The operation of the railroad was discontinued on or about April 30, 1931, and the corporation was afterwards dissolved. In the summer of 1931, after the discontinuance of the railroad, claimants took possession of the 2.77 acres of land formerly used as the railroad right of way, fenced it off and continued in occupation and possession thereof until the State of New York entered thereon for the purpose of constructing a highway, sometime after April 17, 1946. On that date claimants were served with notice of appropriation, together with maps and descriptions of certain parcels of land which the State acquired for highway purposes and which adjoined on either side the former railroad right of way. A preliminary question of the right of the claimants to recover the value of the said 2.77 acres of land, utilized by the State for its highway construction, has already

been disposed of by us. We have held, upon the authority of *Hayner* v. *State of New York* (193 Misc. 74, certificate of no appeal issued February 23, 1949) that claimants are entitled to recover damages for the lands formerly used by the railroad.

After our determination on this preliminary issue the case proceeded to trial. Thereupon claimants offered the testimony of a competent engineer to show that, by reason of the fact that when the railroad was constructed a cut was made through a knoll of the farm which they now own, the State of New York, by utilizing the railroad right of way, was required to excavate at least 12,780 cubic yards of earth less than would have been necessary had the cut not been made. The engineer also testified that the contract price which the State paid for excavation under its highway construction contract was fifty cents per cubic yard. The conclusion suggested is that the State of New York was thus saved an expenditure of at least $6,390. The court received this testimony of the engineer over the objection of the Attorney-General and with a reservation to him of a motion to strike it from the record. On this motion decision was reserved and we now consider the admissibility of this testimony.

At the outset it is clear that claimants are not entitled to recover as an item of damages any sum of money which the Public Works Department saved to the State of New York by availing itself of the former railroad site. The measure of damages is not what the land cut was worth to the State. (*Matter of Daly* v. *Smith*, 18 App. Div. 194; *Matter of Daly*, 72 App. Div. 394; *Matter of East Riv. Gas Co.* v. *City of New York*, 119 App. Div. 350; *Matter of Simmons* [*Ashokan Reservoir Sec. No. 6*], 130 App. Div. 350, affd. 195 N. Y. 573, affd. *sub. nom. McGovern* v. *City of New York*, 229 U. S. 363.)

But is it not proper for us to consider the physical situation presented by the man-made alterations to the natural contours of the land? May we not give weight to the adaptability of the area to the purposes for which the condemnor used it? The following authorities seem to indicate an affirmative answer: *Matter of New York, Lackawanna & Western Ry. Co.* (27 Hun 116), *Matter of Gilroy* (85 Hun 424), and *Matter of Supt. of Highways of Town of Frankfort* (193 Misc. 617). However, there are distinguishing facts. In the *Lackawanna* case (*supra*) the land condemned was a narrow strip eighteen miles long. It had formerly been a canal, it was held by the owner for railroad purposes and it was still in the ownership of the canal corporation which had not sold or disposed of any of its lands

or devoted any of them to private use. In the *Gilroy* case (*supra*) the property condemned was the fee of the land under water constituting the bed of Lake Gilead in Putnam County. Here was a natural reservoir. The General Term held (p. 428) that the commissioners erred in excluding from consideration as an element in the market value of the property taken " its adaptability to furnish a portion of the water supply of the city of New York." As pointed out later on in the Second Department in *Matter of Daly* (*supra*, p. 396) " It was declared to be proper to consider * * * the existence of a demand for such property on the part of the city. " But the General Term approved the rule " that the desirability of the particular property to the city in view of its necessities was not the legal measure of damages." (*Matter of Gilroy, supra*, p. 426.) In the *Frankfort* case (*supra*) the strip taken was one hundred feet wide and more than a mile long. It had been improved by the owner, the Utica Transit Corporation, or by its predecessor in title, for use as a roadbed for an interurban trolley line and, although such use had been abandoned, the property was still in the hands of the receivers of the transit corporation.

In this case the strip once used by the railroad is about 100 feet wide and 1,630 feet long and in this respect resembles the land taken in the *Frankfort* case (*supra*), the difference being in linear dimension. The Connolly strip is terminated on the west by lands which this court has held had reverted to Hayner. On the east it is bounded by other lands which were also privately owned because, as appears from the appropriation map in evidence, they are a continuation of the Rochester, Lockport and Buffalo right of way through the adjoining property of one Eick and presumably have reverted to him, although the question may not have been litigated. Moreover upon the trial of this claim Mr. Connolly testified: " In mid-summer of 1931. * * * We immediately put a fence up at both edges of our farm and used that as a pasture. * * * We never actually used it for crops but we built a road through there and also had a shovel come in and dig a pond for water. We had a roadway. It was lower than the farm and we had to build it up." " We worked on this water hole considerably with our own tractor and shovel, the old-fashioned scraper shovel, and then we hired a crane shovel come in to dig that out for us." " We built a roadway back over the old right-of-way and we could let the cattle out of the barn and they could go back by themselves. We used the old so-called trolley right-of-way as pasture, and they could go and pass through there."

It thus appears that the 2.77 acre strip of land was merged with and utilized as part of the farm. It was used as pasture and as a passageway from the farm buildings to lands in the rear and as a site for ponding water. There is testimony in the record, other than that which is here under attack, to support these elements of value which might have attracted any prospective buyer. Indeed, the loss of the pond site in which surface and spring waters collected, thereby affording a supply of water for spraying and other purposes, is one of the principal items for which claimants ask consequential damages. We shall give it consideration in due course. But it does not appear that this segment of abandoned right of way, as such, had an intrinsic market value or contributed to the market value of the whole property. Hence we believe that it would be improper to give consideration to the engineer's testimony and we strike it from the record. Motion granted.