Argued September 11, affirmed September 30, 1959
SANTIAM LUMBER COMPANY *v.* CONHAIM
344 P. 2d 247

*C. S. Emmons* argued the cause for appellant. On the brief were Willis, Kyle & Emmons, Albany.

*Norman J. Wiener*, Portland, argued the cause for respondent. With him on the brief were King, Miller, Anderson, Nash & Yerke, Portland.

Before McAllister, Chief Justice, and Rossman, Perry and Redding, Justices.

REDDING, J. (Pro Tempore)

This is an action to condemn an easement of a right of way for a logging road over two strips of land

each of which is a part of a tract of land owned by the appellant. Respondent-condemner instituted a separate action as to each strip and, by agreement of the parties, the two actions were consolidated for trial in the circuit court and are likewise consolidated here.

From a judgment, based upon a jury verdict fixing the value of each of the two strips in question, the owner has taken this appeal.

The appellant complains that the trial court erred in excluding evidence she attempted to introduce as to the quantity of timber that might be expected to be removed over the right of way sought to be condemned. The appellant likewise complains that the trial court erred in instructing the jury that, in determining the fair market value of the strips of land being condemned, they were not to take into consideration the road which was then on such strips of land. At the time these actions were instituted, respondent was using a private logging road constructed by it in 1953 extending from a point on a public highway near Foster across private lands to timberlands owned and controlled by it. Two comparatively short segments of this existing private logging road cross appellant's lands. It is these two segments of said road which are the subject matter of these condemnation actions.

Respondent acquired its right to construct and thereafter use for a limited time the segments of the road crossing appellant's lands in the following manner. On April 4, 1941, appellant sold the timber on the lands in question to respondent's predecessor in interest and granted a right of way thereover for a period of fifteen years, the right expiring April 3, 1956. Respondent succeeded to such rights, proceeded to construct a logging road thereto and thereover, and thereafter removed the timber. Being unable to obtain

from appellant an extension of time beyond April 3, 1956, for the right of way over the segments of the road crossing appellant's lands, respondent instituted these actions in September, 1955, to condemn such right of way.

The lands of appellant crossed by respondent's private logging road are logged-off lands in the foothills of the Cascade Mountains, approximately twenty miles northeast of Sweet Home. Respondent had removed the timber from said lands by November, 1955. There are no buildings or other improvements save a portion of the logging road built by respondent on appellant's lands.

The segments of the private logging road crossing appellant's lands are connected on each end to the remainder of respondent's road crossing other private lands owned or controlled by respondent. In other words, neither the public, the appellant nor a prospective purchaser of appellant's lands is or would be entitled to access across said road from a public highway to appellant's lands.

At the trial, appellant sought through various witnesses to prove value by showing the amount of timber to be hauled over the strips of land sought to be condemned. It is the ruling of the trial court, excluding such testimony as a basis for value, which appellant challenges in her first assignment of error.

■■ It is clear from the tendered testimony that appellant's witnesses based their opinions as to value, not on the location of the strips of land, but on the assumption that timber from lands of the United States or other owners will be hauled thereover; an assumption which would be defeated by change in governmental policy, by the whims of nature, such as a de-

structive fire or disease, by changing economic conditions or by new technological developments. We think that in a condemnation proceeding to acquire an easement for a logging road right of way, evidence of the quantity of timber that might be transported over the right of way is not a proper factor to be considered by the jury in determining the fair market value of the land being condemned. Both of appellant's witnesses on value, John A. Meyers and Benjamin Shaw, in their testimony disclosed upon cross-examination that they assigned values of $20,000 and $15,000, respectively, to the strips of land in question, either because the strips were segments of an existing logging road or because timber might be removed thereover. We believe such valuation, based upon assumed quantity of timber to be removed thereover, being speculative and conjectural, is improper. *Oregon Railroad & Navigation Co. v. Taffe*, 67 Or 102, 134 P 1024, 135 P 332, 135 P 515; *Olson v. United States*, 292 US 246, 78 L ed 1236, 54 S Ct 704; *Polson Logging Co. v. United States*, 160 F2d 712; *Meskill & C. R. R. Ry. Co. v. Luedinghaus*, 78 Wash 366, 139 P 52; *Connoly v. State*, 96 NYS2d 54, 197 Misc 1052.

■ It is the rule of this state that the test of just compensation is the actual fair cash market value of the strip of land sought to be condemned, plus the depreciation in value, if any, of the remainder of the landowner's lands not included in the proposed right of way. *State Highway Commission v. Burk*, 200 Or 211, 265 P2d 783; *Coos Bay Logging Co. v. Barclay*, 159 Or 272, 79 P2d 672; *Pape et al. v. Linn County*, 135 Or 430, 296 P 65; *La Grande v. Rumelhart et al.*, 118 Or 166, 246 P 707; *Portland & O. C. Ry. Co. v. Sanders*, 86 Or 62, 167 P 564; *Portland-Oregon City Ry. Co. v. Penney*, 81 Or 81, 158 P 404.

■ It is well established in this state that value to condemner is not a true test of just compensation. *Oregon Railroad & Navigation Co. v. Taffe*, supra. As was pointed out by Chief Justice BEAN, speaking for this court in *Coos Bay Logging Co. v. Barclay*, supra, at page 283:

> "We think it is a rule that damages, to be recovered in condemnation proceedings, are controlled, not by the extent of present use by condemnor or present intention of condemnor to use, but by the right to use that is acquired by condemnor: (citing cases)."

■ Assignment of error No. II relates to the giving of the following instruction:

> "In determining the value of these strips of land being condemned, you are not to take into consideration or add to the value thereof the road which is presently on the strips of land, including the grading, ballast, or other improvements placed on the strips of land by plaintiff and necessary for its use as a logging road."

The foregoing instruction, considered alone, might be said to be subject to the criticism that it fails to take into consideration any intrinsic market value that the component parts of the roadbed on appellant's property might have, or the enhancement, if any, of the fair cash market value of appellant's property as a whole occasioned by the presence of such road thereon. In the opinion of the court, the giving of the foregoing instruction in the instant case was not prejudicial to the appellant for two reasons. In the first place, all of the witnesses on value produced by the appellant, as well as the respondent, agreed that the component parts of the segments of the road located on appellant's property had no intrinsic market value, nor did the portion of such road located thereon con-

tribute to or in any way enhance the market value of appellant's property as a whole. In this regard, appellant's witnesses testified that if the roadbed on plaintiff's property were at another location on appellant's property, unconnected in any way with respondent's road extending over property other than appellant's, or if the owner or a prospective purchaser of appellant's property could not travel upon the respondent's private road extending from appellant's property to the public highway, the market value of the roadbed would be "forty bucks" only that of bare land. *State Highway Commission v. Holt,* 209 Or 697, 308 P2d 181.

In the second place, and in the opinion of the court, ample justification under the circumstances of this case for the giving of said instruction is the fact that the segments of the road located on the strips of land sought to be condemned had been constructed by respondent at respondent's sole cost and expense. Even if it be assumed that the component parts of the segments of said road located on appellant's property had intrinsic market value, or that said segments of road enhanced the market value of appellant's property as a whole, the appellant would not be entitled to be compensated therefor under such circumstances. *Oregon Railroad & Navigation Co. v. Mosier,* 14 Or 519, 13 P 300; *Seark v. School District No. 2,* 133 US 553, 33 L ed 740, 10 SCt 374; *Anderson-Tully Co. v. United States,* 189 F2d 192; *United States v. Hayman,* 115 F2d 599; *United States v. Certain Parcels of Land* (DC Cal 1955), 131 F Supp 65; 2 Lewis on Eminent Domain, 3d ed, p 1346-1349, § 759.

The inference which the appellant seeks to draw that the cost of constructing the road was borne by her is without foundation. The timber deed of April 4, 1941, does not indicate that any reduction was made

in the price at which she sold the timber to respondent's predecessors in consideration of the purchaser agreeing to build a road upon appellant's property, nor is there any specification of the time, location or character of the road to be built. Indeed, the provision of the timber deed places no obligation whatever on the respondent to build a road at any time or of any character. Provisions of the timber deed with reference to road construction were permissive only, and indeed placed no obligation on the grantee to leave upon appellant's lands any road that it or its successors might elect to construct thereon. Appellant had no basis for assuming that on April 4, 1956, had there been no condemnation, the roadbeds and the materials making up the same would remain; nor was she entitled to assume that on said date would such roadbed be in fit condition to use as a part of a road system. Indeed she was not entitled to assume that such roadbeds as her grantee, under the permissive provisions of the timber deed, might elect to build would be roads of such kind or character as would form the basis for assigning any value whatsoever to them as roads.

The appellant adamantly relies upon the common-law maxim, *quicquid plantatur solo, solo cedit*, and insists that the attachment to the soil of the segments of the road in question is decisive of their character as fixtures and the right of the owner of the land to them upon the expiration of the term granted for their construction and use. The old rule that all things annexed to the realty become a part of it has been greatly relaxed in modern times for the encouragement of trade, manufactures and transportation. In *Oregon Railroad & Navigation Co. v. Mosier*, supra, a railroad corporation obtained a right of way for its railroad from the person in possession, supposing him

to be the owner, and entered upon the land and constructed its road thereon. Thereafter, in an action to condemn said lands, Chief Justice LORD, speaking for the court, in holding that the true owner was not entitled to have the value of the railroad improvements considered in assessing the damages, stated:

"The old rule, that all things annexed to the realty become a part of it, has been much relaxed, and several exceptions recognized; as where the intention is manifest to use the alleged fixtures in some employment distinct from the use of the soil or husbandry, or where the chattel has been affixed for the purposes of trade or the mechanical arts. In modern times, for the encouragement of trade, manufactories and transportation, and owing no doubt in part to the increased value and importance of personal property, many things are now considered as personalty which are attached to the soil. The necessities and convenience of an advancing civilization have demanded a relaxation of the strict rule, so that now attachment to the soil is only one of several conditions to help in determining whether a given thing belongs to the realty. The books indicate that various considerations have been applied by the courts in the determination of this question; and that few decisions, although involving fixtures of a similar character, can be considered of absolute authority for its disposition; but that in the nature of things every case must depend more or less upon its own special facts and peculiar circumstances. * * *
 * * *

"In view of the rights thus delegated by the state to the corporation, the purposes for which they were conferred, the public use for which the land is condemned, the just compensation required to be paid for its appropriation, and the great interest the public has in the successful operation of the road, it seems to us that these are elements which plainly distinguish the acts of a corporation,

although technically a trespasser, in building its road upon land without proper authority therefor, from the acts of a common trespasser in affixing chattels to the freehold, and to render inapplicable the strict rule of law which would treat such improvements as fixtures and part of the realty, or to require the law to be administered upon the just and liberal principles of the exceptions to that rule which would record such improvements as personalty, and exclude them in computing the value of the land."

In holding that a railroad had the right to remove an abandoned brick depot constructed upon lands pursuant to the verbal consent of the owner, Justice Merrimon, speaking for the court in *Western North Carolina Railroad v. Deal*, 90 NC 110, said:

"The general rule of law is, that buildings and other structures erected on land for the better enjoyment of it, become identified with, part of, and go with the land, and the tenant has no right at any time to remove them. Anciently the law was more strict in respect to making things erected upon, and attached to the land, directly or indirectly, a part of the freehold, than in more modern times. As civilization has advanced, and trade, the mechanic arts, and other industries have multiplied and increased in development, and correspondingly, in their necessities and wants of reasonable convenience, there has been a growing relaxation of the strict rule of law mentioned in their favor.

"It is the policy of the law to encourage trade, manufactures, and transportation, by affording them all reasonable facilities. Buildings, fixtures, machinery, and such things, certainly intended and calculated to promote them, are treated, not as part of the land, but distinct from it, belonging to the tenant, to be disposed of or removed at his will and pleasure. Hence if a house, or other structure, is erected upon land only for the exercise of trade or the mixed purpose of trade and agriculture, no

matter how it may be attached to it, it belongs to the tenant, and may be removed by him during his term, and in some classes of cases, after it is ended; though the tenant, after his term is over, would, in going back upon the land to get his property, be guilty of a trespass in going on the land, and only in that respect, the property would remain his.

"The exceptions to the general rule pointed out above are well settled, and the practical difficulty in any case arises in pointing out when the general rule, or the exception, applies. The exception does not depend upon the character of the structure or thing erected, or whether it is built of one material or another, or whether it be set in the earth or upon it, but whether it is for the purposes of trade or manufacture, and not intended to become identified with and part of the land; this is the test."

■ Can it be said it was the intention of the respondent in building said road that the relatively small segments thereof traversing appellant's lands were to become a part of said realty and thereby be surrendered to appellant on April 4, 1956? Respondent made no express agreement to that affect, and we think that no such intention can be implied from the building of portions of said road upon appellant's lands under the circumstances of this case. It would appear that, subject only to the establishment of its right to so condemn, the respondent, in constructing the road in question upon and over appellant's property, had the right to assume that should it be unsuccessful in obtaining by agreement the right to use such right of way after April 3, 1956, it would be entitled to acquire such right of way by appropriate proceedings for condemnation without having the value of the road included in assessing the damages.

There is no error and the judgment of the trial court must be affirmed.