Jonas and others, Respondents, v. State (Highway Commission), Appellant.

*March 6—April 30, 1963.*

640

For the appellant the cause was argued by *A. J. Feifarek,* assistant attorney general, and *Patrick L. Crooks,* district attorney of Marathon County, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondents there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *Richard J. Weber* of counsel, all of Wausau, and oral argument by *Herbert L. Terwilliger.*

FAIRCHILD, J. 1. *Unity of use.* An owner of property is entitled to compensation for severance damages as well as for property actually taken.[1]

"In the case of a partial taking the compensation shall be determined by deducting from the value of the property immediately before the time of evaluation, its fair market value immediately after the date of evaluation, . . ."[2]

Where two or more distinct parcels (at least when owned by the same person) are used as a unit, the parcels may be treated as one and the taking of part or all of one of them treated as a partial taking of the combined whole.[3]

[1] Sec. 32.09 (5) (a) and (b), Stats. 1959. Note revisions in sec. 32.09, Stats. 1961.

[2] Sec. 32.09 (6), Stats. 1959.

[3] For an example of adjoining parcels owned by the same person which must not be considered together because devoted to separate

In the case before us the use of the parcel east of Martin avenue was to some degree, at least, associated with the use of the parcel to the west. The state claims that nevertheless it must be held as a matter of law that the parcels are not to be treated as one because different persons own the respective parcels. Plaintiffs claim that identity of ownership need not always exist before unity of use can be recognized and, further, that if the "corporate fiction" be disregarded, the ownership of these two parcels is sufficiently similar to be treated as identical.

A number of considerations relevant to the question of "What constitutes a separate parcel" are found under that heading in 4 Nichols, Eminent Domain (3d ed.).[4]

The general rule is stated:

"It is, of course, essential to constitute a single parcel that it be owned in its entirety by one owner or one set of owners." [5]

The author cites, however, one decision in support of the proposition,

". . . that diversity of ownership, in and of itself, does not preclude consideration of the several tracts as one where such tracts are contiguous and are used in common by the owners pursuant to agreement." [6]

. We might well agree that an owner of one parcel (not taken) who has used it, and has the right under lease or other contract to continue to use it, as a unit with the parcel taken, would be entitled to severance damage and the condemnor would be compelled to pay such damage in addition to the value of the parcel taken, considered separately. The

and distinct uses, see *Lippert v. Chicago & N. W. R. Co.* (1920), 170 Wis. 429, 175 N. W. 781.

[4] p. 715, sec. 14.31.

[5] *Op. cit.,* p. 733.

[6] *Op. cit.,* p. 734; *County of Smith v. Labore* (1887), 37 Kan. 480, 15 Pac. 577.

present record, however, does not show that Jonas & Sons, Inc., the owner of the parcel west of Martin avenue, had any lease or other contractual right to continue its use of the parcel east of Martin avenue. Although Jonas & Sons, Inc., had two buildings located on the parcel east of Martin avenue, it does not appear that they had, as against Mr. and Mrs. Jonas, the owners of that parcel, any enforceable right to continue to keep the buildings there. The fact that because of the personal relationship a difference of opinion as to the use of these parcels would be unlikely is an insufficient basis for an award of severance damage.

A corporation is treated as an entity separate from its stockholder or stockholders under all ordinary circumstances. Although courts have made exceptions under some circumstances, this has been done where applying the corporate fiction "would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." [7] Those who are responsible for the existence of the corporation are, in those situations, prevented from using its separate existence to accomplish an unconscionable result. In the present case, those who created the corporation in order to enjoy advantages flowing from its existence as a separate entity are asking that such existence be disregarded where it works a disadvantage to them. We do not consider it good policy to do so.

Moreover, even if the stockholders of Jonas & Sons, Inc., Mr. Jonas and the two sons, were to be considered as the real owners of the parcel west of Martin avenue, the two sons had no interest in the fee of the parcel to the east. There the owners were Mr. and Mrs. Jonas.

We conclude that the issues as to unity of use, the value of the two parcels considered together before the taking, and

[7] *Milwaukee Toy Co. v. Industrial Comm.* (1931), 203 Wis. 493, 496, 234 N. W. 748.

the value of the parcel west of Martin avenue should not have been submitted to the jury.

2. *May the answer to the fourth question be considered alone?* In answering the fourth question, the jury found the fair market value of the plaintiffs' property taken, considered as a whole, to be $66,300.

This question seems to have been intended to refer only to the value of the parcel east of Martin avenue. Plaintiffs correctly point out that the expert opinions of value of that parcel ranged from $50,000 to $83,115, and thus a finding that the parcel east of Martin avenue was $66,300 is supported by the evidence. If the answers to the first three questions be disregarded, the answers to the fourth and fifth would sustain the judgment.

The state contends, however, that the $66,300 answer to the fourth question must have included severance damage on the theory there was unity of use. We conclude that the answers to the first three questions, in the light of the instructions and the evidence, cast enough doubt on whether the jury intended to find the parcel east of Martin avenue worth $66,300, so that that answer cannot support the judgment.

The $66,300 answer to the fourth question is equal to the difference between the answers to the second and third questions. Yet the jury had found unity of use after being instructed that they should do so only if they found that the severing of one parcel from the other diminished the fair market value of the parcel west of Martin avenue. If the jury followed that instruction, then they could not have found that the value of the parcel east of Martin avenue was equal to the difference between the value of both parcels as a whole and the parcel west of Martin avenue; in other words, that the severance damage was zero. If the jury found there was severance damage, the answer to the fourth

question could be explained only on the theory that the jury considered $66,300 the total damage, not just the value of the parcel east of Martin avenue.

In answer to the third question, the jury found that the value of the parcel west of Martin avenue after the taking was $18,000, or $4,678 below the lowest figure sustained by the evidence.[8] This answer may have been caused by the jury's belief that it should reflect severance damage by reducing the fair market value of that parcel. Though the belief would be mistaken, they may have so interpreted the following instruction:

"If you come to answer the third question you are instructed that in arriving at your determination of the fair market value of plaintiffs' property, immediately after the taking, you are instructed to consider and allow such severance damages, if any, to the remaining property as you are convinced by the required degree of proof, have resulted by reason of the taking of the land on the east side of Martin avenue."

If the value, before the taking, of the two parcels considered together was $84,300 as found in answer to the second question, and if the parcel west of Martin avenue, considered alone, was worth $22,678, the parcel east of Martin avenue could not have been worth more than $61,622.

We cannot be certain of any particular explanation of the answers, but there is sufficient probability that some amount of severance damage is reflected in the answer to the fourth question that the verdict should be set aside.

The state moved for judgment in favor of plaintiffs in the amount of $6,622 plus interest. If plaintiffs desire to accept judgment in that amount, the state will be in no

---

[8] The opinions as to that parcel ranged from $22,678 to $25,700. A finding of value below the lower figure could not be sustained. *Washburn v. Milwaukee & L. W. R. Co.* (1884), 59 Wis. 364, 369, 18 N. W. 328.

position to complain. If the plaintiffs do not desire to accept such judgment, there must be a new trial.

3. *Costs.* The circuit court awarded costs to the plaintiffs. The state was the successful party in the circuit court since the verdict was less than the award of the commissioners from which the state had appealed.[9]

Sec. 32.05 (10), Stats. 1959, provided that costs shall be allowed pursuant to sec. 271.02 (2), which provides in part, as follows:

> "In equitable actions and special proceedings costs may be allowed or not to any party, in whole or in part, in the discretion of the court, and in any such case the court may award to the successful party such costs. . . ."

Plaintiffs contend that under the statute the discretion of the court extends to awarding costs to the unsuccessful party in the action. The state takes the position that the discretion extends to what, if any, costs will be allowed to the successful party, but that no portion of the costs may be allowed to the unsuccessful party. Although the statute is somewhat ambiguous, we consider the state's interpretation to be more reasonable. The judgment could properly deny costs to the state but should not have granted costs to the plaintiffs.

*By the Court.*—Judgment reversed; cause remanded for a new trial unless within twenty days from the filing in circuit court of the remittitur on this appeal, plaintiffs file in that court an election to take judgment in the amount of $6,622 plus interest, but without costs.

WILKIE, J., took no part.

[9] *Trempealeau County v. Marsh* (1948), 252 Wis. 278, 31 N. W. (2d) 519.