Caroline K. Simon, J.
These claims arise out of the permanent appropriation in fee of land reputedly owned by claimant M.T.M. Realty Corp., hereafter denominated “ M.T.M. ”, in connection with the construction of the Sunrise Highway Extension, S.H. No.-in the County of Suffolk, pursuant to section 30 of the Highway Law. The taking is described as Map No. 2040-R-I, Parcel Nos. 40, 201, 208 and 209. The parties stipulated that the aforesaid map was filed in the Suffolk County Clerk’s office on May 9, 1960. The court adopts the descriptions of the appropriated properties as shown on the map and descriptions filed in the Suffolk County Clerk’s office, a copy of which is attached to each of the claims and the same are incorporated herein by reference. Both claimants filed their respective claims with the Clerk of the court and the Attorney-General on May 8, 1962.
Claimant derived title to the original parcel, a unified tract of land comprising close to 150 acres, by reason of a deed dated December 9,1952 from Alfred Grant as administrator of the last will and testament of Louisa D. Pratt, deceased, as grantor, to M.T.M., said deed having been recorded in the Suffolk County Clerk’s office on December 15, 1952 in Liber 3450 of Deeds at page 332, for an actual consideration of $64,500.
The principal disputed issue between the parties stems from claimants’ assertion that there is sufficient proof in the record of contiguity and common use of the land originally acquired and owned by M.T.M. as heretofore recited and subsequently conveyed by M.T.M. to Landing Estates, Inc., by a deed dated December 31, 1959, and recorded in the Suffolk County Clerk’s office on January 15, 1960 in Liber 4755 of Deeds at page 372, to justify submission of proof on the question whether the remaining land conveyed to and presently owned by Landing Estates, Inc., suffered severance damages and to warrant an appropriate award therefor. In that connection, the parties are in accord that the lands conveyed to Landing Estates, Inc., were not directly affected by reason of the within takings.
The court finds that on the evidence presented claimants have amply demonstrated contiguity and control so as to permit application of the more flexible approach in regard to the *46 abstract doctrine of the unity of title or ownership enunciated by the Appellate Division, Third Department, in Guptill Holding Corp. v. State of New York (20 A D 2d 832, 23 A D 2d 434). The undisputed facts establish control in M.T.M. and are not in dispute. Both corporate claimants are wholly owned family corporations whose officers are all members of the same family, headed by Eugene F. Martin, Avho holds the office of president in each corporation. All of the shares of stock were initially and are presently held by members of Mr. Martin’s immediate family, to wit, his sons and a daughter, each of whom were and are presently officeholders in one or the other of the corporations. Mr. Martin testified without contradiction that M.T.M. was created as a parent corporation, set up to acquire real estate for residential development and that Landing Estates, Inc., was created as a subsidiary corporate entity to which properties acquired by the parent corporation were conveyed and that actual subdivision and development of such properties Avas undertaken by the latter as a matter of family and business efficiency. It was further established that M.T.M. would take back mortgages on properties conveyed by it to Landing Estates, Inc., and that the proceeds of sales to individual residential lot holders by the latter would serve as consideration for the mortgages and would be divided up between the parent and its subsidiary. The two parcels sold by M.T.M. to its subsidiary in 1959 yielded a consideration of $21,500 or a per acre cost to the subsidiary of approximately $540. Certain portions of the mortgages executed by the corporate claimants Avere released by the parent to its subsidiary, and these releases were recorded.
While it has been held that the mere conveyance of property by an individual to members of his immediate family does not ipso facto constitute unity of ownership sufficient to sustain an award of severance damages (Kessler v. State of New York, 21 A D 2d 568) the court is satisfied that the corporate entities at bar were truly integrated not only by reason of family ownership but by reason of unity of business purpose and actual practice so as to sustain the court’s determination to treat the parcels conveyed by the parent to its wholly owned subsidiary as an integrated unit.
These factual considerations persuaded the court to grant claimants’ motion to consolidate both claims for trial over defendant’s objection.
Nevertheless, the court concurs with defendant’s legal posture that claimants have failed to establish by the requisite preponderance of evidence that claimants’ remainder parcel suffered any consequential or severance damages by reason of the instant *47 takings and finds that any award rendered herein must he limited to direct damages.
In so doing, we find that for purposes of the instant apppropriations claimants’ original holdings comprised only 48.025± acres, consisting of 9.273± acres actually appropriated together with the two parcels of 24.701± acres and 14.051± acres, respectively, conveyed by M.T.M. to Landing Estates, Inc., in December of 1959. This parcel is situated south of Section 3 Landing Estates, north of Section 4 Landing Estates and west of Washington Heights Avenue, Hampton Bays, Town of Southampton, Suffolk County, the sections noted derived from a survey map copied November 5,1964 from a survey dated October 27,1957 by duly licensed land surveyors with offices in Southampton. The southernmost edge of the tract conveyed to Landing Estates, Inc., abutted Montauk Highway and was zoned Business “ F ” to a uniform depth of 500 feet, and the remainder of the parcel was zoned Residential “ C ” requiring 15,000 feet of minimum square footage per plot. The topography of the parcel is rolling and wooded. The property was and is presently unimproved. Washington Heights Avenue to the east is a paved public street.
The court finds that the highest and best use of the subject property both before and after the instant takings is for the construction of one-family residential dwellings in keeping with current zoning regulations and present market demand, with the exception of the frontage along Montauk Highway, which frontage the court finds was not adversely affected by the within takings and was and is presently best suited for commercial development.
The within takings appropriated 9.273± acres of claimants’ land, all of which fell within the area zoned for residential development. In valuing the acreage thus acquired the court has been compelled to rely on the comparable sales introduced by defendant’s appraiser and the market approach utilized by that expert, since claimants were precluded from introducing any proof of comparable sales, since the Court of Claims rule as to service on the opposing party had not been met. Moreover, claimants failed to support their expert’s opinion as to value of acreage appropriated, which he set at $2,500 per acre, with any factual data which would justify reliance on that opinion. It is too well settled for citation that an expert opinion as to market value without factual support in the record is of little probative value and must-be accorded little or no weight.
However, based on the court’s statutory view of the property and the surrounding area, the comparable sales introduced by defendant and the expert testimony introduced in relation *48 thereto, and its over-all evaluation and review of the evidence, the court fixes the per acre value of the property taken for public purposes at $1,000 an acre. In evaluating vacant land such as that involved in this taking, the proper legal approach is to treat the land as raw acreage, giving the land an increment in value predicated on its potential development for residential subdivision. (Tarricone v. State of New York, 23 A D 2d 804.) In this regard the court finds that the defendant’s expert valuation of $750 an acre is inadequate in that it did not give sufficient weight to the development potential of the property on the appropriation date.
Based on the foregoing determinations the court finds that the fair and reasonable market value of the subject property prior to the within taking was $48,025; that the fair and reasonable market value of the subject property subsequent to the within taking was $38,752; and that the amount by which claimants have been damaged is $9,273, all of which represents direct damages, for which damages claimants are entitled to an award with appropriate interest.
Claimants are awarded the sum of $9,273 for all damages directly attributable to the within takings, with interest thereon from May 9, 1960 to November 9, 1960 and from May 8, 1962 to the date of entry of judgment herein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.
This constitutes the decision of the court in conformity with the requirements of CPLR 4213.