Argued and submitted March 11, 1986, Court of Appeals reversed, judgment of the trial court affirmed in part, reversed in part and remanded March 3, 1987

## CITY OF SALEM,
*Petitioner on review,*

*v.*

## H.S.B. et al,
*Respondents on review,*
## M. P. MATERIALS CORPORATION,
*Intervenor-Respondent on review.*

## (CC 132292; CA A31107; SC S 32285)

733 P2d 890

David J. De Martino, Deputy City Attorney, Salem, argued the cause for petitioner on review. With him on the petition was William J. Juza, City Attorney, Salem.

John E. Frohnmayer, Portland, argued the cause for respondents on review. With him on the response were Marjory A. Wall and Tonkin, Torp, Galen, Marmaduke & Booth, Portland.

GILLETTE, J.

## GILLETTE, J.

This is a condemnation case in which plaintiff, the City of Salem (the City) seeks review of a judgment for defendants and intervenor. The case began when the City condemned a portion of property belonging to defendants Hill, Brady and the Staatses, through their partnership, H.S.B., (defendants) for use as a highway right-of-way. Intervenor M.P. Materials Corporation (MPM) claimed severance damages as a result of the condemnation, arguing in its answer to the City's complaint that its separate tract of property was also "damaged because it is irrevocably committed to a unified use with that land taken." At the end of the trial, a jury jointly awarded defendants and MPM $90,950 for damages for the land taken and $151,833 as severance damages to the MPM tract. Of that amount, $90,950 had already been paid into the court and satisfied defendants' claim. Defendants also were awarded attorney fees and expert witness expenses. The balance of $151,833, with interest, went to MPM as severance damages. The City appealed. The Court of Appeals affirmed the judgment of the trial court. *City of Salem v. H.S.B.,* 75 Or App 556, 707 P2d 73 (1985). We granted review to determine whether the Court of Appeals applied the correct "unity of ownership" test in affirming judgment for the intervenor, MPM. We reverse the award of attorney fees and expert witness fees to defendants, and the award of severance damages to MPM.

### FACTS

In 1976, MPM leased a parcel of land (the "east parcel") which contained a large deposit of quality gravel. The gravel was covered by varying depths of soil known as "overburden." An estimated 750,000 cubic yards of overburden would have to be removed in order to excavate and mine the gravel. Approximately 400 feet to the northwest of the east parcel was a 38.5-acre tract of land (the "west parcel"), a portion of which was the subject of the City's present condemnation action. The west parcel, which was separated from the east parcel only by railroad tracks and a small tract of land owned by the State of Oregon, appeared to be favorably situated for disposal of the overburden.

In 1977, defendant HSB bought the west parcel and leased it to MPM for five years. The lease provided that MPM

could use the west parcel "only for landfill purposes and the disposition of clean fill and overburden." After removing nearly 250,000 cubic yards of overburden in 1978, MPM discontinued mining operations because of economic conditions and other problems. In 1979, MPM purchased the east parcel. At the condemnation proceeding, a witness for MPM testified that, although no materials had been removed since 1978, mining operations could recommence in 1985 or 1986.

At this point, the relationship between the various parties requires explanation. Defendant HSB (the owner of the west — condemned — parcel) is a partnership which, at all times relevant to this case, consisted of defendants Thomas Hill, Robert Brady, William Staats and Margaret Staats. Hill and Brady each owned a one-quarter interest in the partnership; the Staatses owned an undivided one-half interest.

Intervenor MPM (the owner of the east parcel) is a closely held corporation. In 1979, one-half of MPM's stock was owned by Staats Corporation, which in turn was wholly owned either by defendant William Staats alone or by defendants William and Margaret Staats together.[1] The other one-half of MPM's stock was held by Gelco Pacific, Inc. Gelco Pacific was wholly owned by Chemeketa Industries. Defendants Hill and Brady each owned one-half of the stock of Chemeketa Industries. Thus, in 1979, MPM was owned by defendants Hill and Brady, who each held a one-quarter interest, and Staats, who held a one-half interest. Later in 1979, defendant Brady sold his interest in MPM to defendants Hill and Staats, thereby increasing Hill's share to one-third and Staats' share to two-thirds.

To summarize, at the time of the condemnation, Hill and Brady each owned a one-quarter interest and the Staatses owned a one-half interest in HSB, the partnership that owned the west parcel. The east parcel was owned by MPM, in which Staats owned a two-thirds interest and Hill owned a one-third interest. The following chart illustrates the relationship between the parties at the time of the taking:

---

[1] It is unclear from the record whether Mrs. Staats held any interest in MPM. As already stated, she did have an undivided one-half interest in HSB with her husband.

HSB (owner of west parcel)

*Staats* (1/2)  *Hill* (1/4)  *Brady* (1/4)

MPM (owner of east parcel)

Staats Corporation (2/3)  Gelco Pacific (1/3)

*Staats* (or Staatses)·  Chemeketa Industries

*Hill*

In 1981, the City sought to acquire a portion of the west parcel from HSB to be used as a right-of-way for the Salem Parkway, a planned traffic route. Negotiations failed and, on March 2, 1982, the City condemned a 4.9-acre section in the southeast corner of the west parcel. In its complaint, the City alleged that the value of the property taken was $90,950. More than 30 days before trial, the City offered defendants $115,000 for the property. Defendants refused the offer.

Defendants filed an amended answer alleging that the two parcels in question were "part of a unified gravel operation and the taking [of the 4.9 acres] eliminates access to the balance of the [west parcel] thus preventing defendants from reasonably being able to dispose of the overburden from the [east parcel]." On the basis of that allegation, defendants claimed severance damages of $194,333.

After trial began, MPM moved to intervene and was allowed to do so. In its answer, MPM alleged that its land, the east parcel, was damaged "because it is irrevocably committed to a unified use with [the west parcel]"; that the "taking has prevented defendants and intervenor from being able to dispose of the overburden from the [east parcel] to the property on the west"; and that the "reduction in fair market value to the combined parcels is $280,333 [$86,000 plus $194,333]."

After trial, the jury awarded $90,950 for the 4.9 acres taken from the west parcel. The jury also found by special

verdict that "unity of use" existed between the east and west parcels and that the taking had reduced the fair market value of the east parcel. The jury awarded severance damages in the amount of $151,833. The court entered judgment for defendants and MPM for $242,783 ($90,950 plus $151,833) and awarded defendants attorney fees plus expenses, including expert witness fees. The City appealed, challenging, *inter alia,* the award of severance damages to defendants and intervenor and the award of attorney fees and expert witness fees to defendants. The Court of Appeals affirmed, and the City petitions for review.

## ANALYSIS

As a general rule, when the whole or part of a particular tract of land is taken for public use, the owner of the land is not entitled to compensation for injury to other separate and independent parcels held by the owner which results from the taking. *Oregon R. & Nav. Co. v. Taffe,* 67 Or 102, 134 P 1024, 135 P 332, 135 P 515 (1913). *See also Sharp v. United States,* 191 US 341, 24 S Ct 114, 48 L Ed 211 (1903); 4A Nichols, Law of Eminent Domain, § 14.26 (3d ed 1985). However, when it can be shown that two physically separated tracts of land are so joined as to constitute a single parcel, each tract and any injury thereto may be taken into consideration for purposes of assessing severance damages. *Oregon R. & Nav. Co. v. Taffe, supra.* There is no uniform rule or principle of law which is used to determine whether there exists a joinder of separate tracts of land sufficient to bring this latter rule into play. However, the two factors most often emphasized are "unity of use" and "unity of ownership." In the absence of either element, joinder does not exist and severance damages for the tract of land not directly injured by the taking are inappropriate. We find it necessary to discuss only unity of ownership to dispose of this case.

No Oregon case or statute defines unity of ownership for the purpose of severance damages. Courts from other jurisdictions are divided on the issue. The difference in opinion appears to stem from the fact that no clear requirements have ever been enunciated. A number of courts recognize the rule requiring unity of ownership but fail to state or explain what establishes it. Other differences arise due to statutory provisions and the type of property interest involved in the parcels.

The Court of Appeals specifically relied on the New Jersey case of *Housing Authority of Newark v. Norfolk Realty Co.,* 71 NJ 314, 364 A2d 1052 (1976), in which the corporation that owned the condemned parcel was composed of the same individuals who owned all the stock in the corporation that owned the other parcel. The New Jersey court stated:

> "* * * [*T*]*he concept of eminent domain requires that the realities underlying corporate ownership of land be fairly recognized.* Normal business considerations, including due regard for federal tax consequences, may indicate that a bifurcated ownership of the assets of a functionally integrated enterprise is more desirable than ownership by single entity. *The law should not require businessmen to ignore otherwise sensible economic planning decisions in order to retain their right to full actual damages consequent upon a public taking."* 71 NJ at 324. (Emphasis supplied.)

*See also, Department of Transp. v. Arnold,* 154 Ga App 502, 268 SE2d 775 (1980); *Erly Realty Development Inc. v. State,* 43 AD2d 301, 351 NYS2d 457 (1974); *Guptill Holding Corporation v. State,* 23 AD2d 434, 437, 261 NYS2d 435 (1965); *M. T. M. Realty Corp. v. State,* 47 Misc 2d 44, 261 NYS2d 815 (1965); *Sauvageau v. Hjelle,* 213 NW2d 381 (ND 1973).

There is another view, however — a view that incorporation is a status which should not be assumed and discarded at the whim of the incorporators. *See, e.g., Board of Transp. v. Martin,* 296 NC 20, 29, 249 SE2d 390 (1978); *Sams v. Redevelopment Authority,* 431 Pa 240, 244-45, 244 A2d 779 (1968); *Jonas v. State,* 19 Wis 2d 638, 644, 121 NW2d 235 (1963).

We agree with the view represented by these latter cases. Incorporation may hold many attractions — limited tax and other forms of liability not least among them — but it is, at bottom, the creation of a legal entity different from other entities. A corporation is not its incorporators or shareholders; it is not a partnership or joint venture; it is, rather, another and particular kind of creature, with its own rights and duties. *See generally* ORS chapter 57. If its shareholders perceive a need to hold certain separate properties as a unit, because the loss of any would affect the entire unit, their creature can do so. ORS 57.030(4). But, while the corporation holds the property, the shareholders do not.

■■    Just compensation is evaluated in terms of what the property owner has lost and not what the condemnor has gained. *State Highway Comm. v. Hooper,* 259 Or 555, 560, 488 P2d 421 (1971); *Santiam Lumber Co. v. Conhaim,* 218 Or 220, 225, 344 P2d 247 (1959); 3 Nichols, Law of Eminent Domain 8-131, § 8.61 (3d ed 1985). The constitutional requirement of· just compensation only guarantees that the owner of private property may recover the fair market value of the property taken; it neither requires the condemning body to search beyond the public record title[2] nor, by its terms, sanctions looking behind the corporate form in order to determine who the corporate owners are. The latter is particularly true in Oregon, where we have been extremely reluctant to disregard the corporate form unless exceptional circumstances exist. *See generally Amfac Foods v. Int'l Systems,* 294 Or 94, 654 P2d 1092 (1982).

■    The corporate form and its limited liability were created to promote the growth and development of corporate enterprise and investment. The concepts have become cornerstones of corporate law, cornerstones that we will not attack with hammer and chisel unless it is demonstrated to be an absolute necessity. Nothing more than convenience to the stockholders has been shown here. We hold that, in determining the identity of the owner of condemned parcels, the courts of Oregon will not disregard the corporate form and look to the identity of individual shareholders in order to determine unity of ownership, whether such unity be determined by substantial or by complete identity of record title holders of the separate parcels at the date of the taking. To do so would merely provide a benefit to the shareholders by relieving them — for some limited purpose — of the consequences of the corporate form they have voluntarily assumed.

■■    It was error for the trial court and the Court of Appeals to find that unity of ownership existed; we reverse that holding and eliminate the severance damages award. Because we find that unity of ownership was not legally established, there is no need to discuss the City's remaining assignments of error, other than to state that the award of attorney

---

[2] ORS 35.245(2) requires only that an action in eminent domain be commenced "against the person *in whose name the record title appears.*" (Emphasis supplied.)

fees and expert witness expenses was in error. ORS 35.346(2) provides, in pertinent part:

> "(2)  If a trial is held for the fixing of the amount of compensation to be awarded to the defendant owner or party having an interest in the property being condemned, the court shall award said defendant costs and disbursements including reasonable attorney fees and reasonable expenses as defined in ORS 35.335(2) in the following cases, and no other:

> "(a)  If the amount of just compensation assessed by the verdict in the trial exceeds the highest written offer in settlement submitted by condemner *to those defendants appearing in the action at least 30 days prior to commencement of said trial; * * *.*" (Emphasis supplied.)

More than 30 days before this condemnation proceeding, the City offered the defendants $115,000 for the taking of the 4.9 acres of the west parcel. This amount is not exceeded by the jury award of $90,950 for the west parcel. The award of fees and costs pursuant to ORS 35.346(2), therefore, was improper.

The Court of Appeals is reversed. The judgment of the trial court is affirmed as to the award of damages to defendants in the amount of $90,950 but reversed as to the award of attorney fees and expert witness fees. The judgment in favor of intervenor, MPM, for severance damages is reversed. The case is remanded to the trial court for entry of a judgment in accordance with this opinion.