MONTANA STATE HIGHWAY COMMISSION, Plaintiff
and Appellant, v. ROBERTSON AND BLOSSOM, INC., a
Montana Corporation et al., Defendants and Respondents.

No. 11262.
Decided May 22, 1968.
441 P.2d 181.

Daniel J. Sullivan (argued), John P. Poston, Helena, for appellant.

Howard C. Burton (argued), William Coder, Great Falls, for respondent.

MR. JUSTICE CASTLES, delivered the Opinion of the Court.

This is an appeal from a judgment in a condemnation proceeding by the State Highway Commission. The appeal is from only part of the judgment as it pertains to James and Betty Robertson, respondents here.

The action was brought by the State to condemn certain lands in Cascade County belonging to Robertson and Blossom, Inc., a Montana Corporation. After the action was filed, James and Betty Robertson and some fifteen other landowners of property in a subdivision of the City of Great Falls were allowed to intervene as defendants. These intervening landowners claimed that the taking by condemnation of the Corporation land had an effect upon their property, and that such effect was upon a property right protected by the Constitution of the State of Montana.

Trial was had which resulted in a verdict assessing damages due from the State to the Corporation for the value of the land taken and for depreciation to the remainder of the Corporation's land not taken. The fifteen other property owners mentioned above were awarded no damages. The respondents, James and Betty Robertson, were awarded $28,614.79 as the

difference in the fair market value of their property before and after the taking. It is from the judgment on this. verdict to Robertsons that the appeal is taken.

Additionally, as background, the judgment to Robertson and Blossom, Inc., for a strip of land 7.70 acres in size, including damages to the remainder, was for $26,050. An issue arose over payment of the judgment to the respondents herein. See our opinion appearing in Robertson v. State Highway Comm., 148 Mont. 275, 420 P.2d 21.

In 1954, James Robertson and his wife, Wilda Robertson, James D. Cave and his wife, Josephine Cave, as general partners doing business under the name C & R Sales and Service, purchased about 80 acres of land from McNair Realty Co. for the purpose of subdividing and developing the same for residential purposes. The tract was bounded on the north by the Sun River Addition to Great Falls, on the east by the University Addition to Great Falls, on the south by the center line of University Avenue extended westward and on the west by Great Falls International Airport, then known as Gore Field.

In 1956, C & R Sales and Service employed Wenzel & Co. to plat the tract into streets, lots and blocks, constituting a subdivision to be known as West Hill; to lay out rights of way for underground utilities and to do all engineering incident to the establishment of lot corners, street grades and the lay out of sewer and water mains. The plat was completed by Wenzel & Co. on May 10, 1956, and with certificate of dedication complete as of May 14, 1956, was delivered by Wenzel as ready for recording. This plat is referred to herein as West Hill plat one.

On March 13, 1956, plat one was approved by the City-County Planning Commission and all prerequisites to recording were complete but recording was deferred until the area was ripe for admission as an addition to the City of Great Falls.

Immediately after the plat was approved by the City- County Planning Commission, Robertson and Cave undertook development of the acreage according to the plat and by December of 1957, the rough grading of all streets had been achieved. Admission of the proposed addition to the City was deferred by the City Council pending the approval of a bond issue providing for augmented city water facilities and recording of the plat was accordingly deferred.

In the spring of 1958, the developers received word that the State planned to drive an interstate highway through the acreage they had purchased and commenced to develop. Though the route was not definitely fixed, there was left little doubt that the route would pass through West Hill. All work was suspended, for reasons that appear later.

Plat one contained 150 lots with an average of 11,262 square feet per lot, or 3.035 lots per acre and provided five means of access to county roads and the public street system of Great Falls. At the time work on plat one was suspended, engineering costs amounted to $6,671.45 and grading costs amounted to $34,200.00.

It is asserted that in an effort to shape the future of the subdivision and to minimize trouble and expense to the State, the developers dispatched William Wenzel to Helena, who worked with the State Highway Department in an effort to finalize its land requirements, and to determine the proposed road network so that access could be planned. After repeated conferences, Wenzel was finally given a plat of the land which the State Highway Department felt it would require for its proposed interstate route.

Acting on the basis of the information so provided by the State Highway Department, the developers employed Wenzel & Co. in 1959, to replat the subdivision in such fashion as to exclude the tract desired by the State Highway Department for interstate purposes. The new plat, referred to herein as West Hill plat two, was completed on February 23, 1961, and

the subdivision, as replatted, was admitted to the City of Great Falls as an addition on March 28, 1961.

The engineering costs involved in replatting West Hill and in staking new street lines and grades and lot corner amounted to $11,137.90. When redesign of the plat was complete, the developers immediately regraded the new streets. In so doing, 35 percent of the original grading done in plat one, representing a cost of $11,970.00, was lost and in addition, the sum of $2,948.19 was expended to obliterate grading on plat one so that regrading on plat two could go forward. In all then, $14,-918.19 was lost in grading costs. Ninety percent of the engineering and grading costs put into plat one was lost by the changeover.

Plat two released approximately 10.42 unplatted and unimproved acres for highway use, and since the proposed interstate strip separated West Hill from Third Street of the University Addition, it required the use of approximately 3.31 acres for a frontage road paralleling the interstate route. The redesign produced 114 lots with an average of 10,790.65 square feet per lot or 2.814 lots per acre.

On its face, plat two provided two means of access to the public street network, these being via 1st West Hill Drive and 4th West Hill Drive to a county road bordering the Addition along its northeast edge. At the southeast extremity of the Addition, however, 4th West Hill Drive, which marks the western and southern perimeter of the road network of the Addition, and 1st West Hill Drive, the frontage road which marks the east perimeter of the road network of the Addition, meet and dead-end on University Avenue extended westward and on a recorded easement held by the City of Great Falls for the passage of utility mains to Great Falls International Airport and the maintenance of a booster pump station.

The strip held by the City for a utility easement was granted on June 1, 1938, and has been used continuously since that time as an extension of University Avenue, and as a means of access

by motor vehicles to the City's booster pump station, to the lands of McNair Realty Co., and to those lands procured for the development of West Hill from McNair Realty Co. In plat one, 4th West Hill Drive was extended adjacent to and upon this easement to join with University Avenue as the prime means of access between West Hill and the public street network. The easement granted to the City contained an express reservation in the grantors permitting their use of the strip as a roadway.

In April of 1962, the partnership C & R Sales and Service was dissolved with the result that James Robertson, then an unmarried widower, became vested with title to all property procured by the developers from McNair except the park property and streets dedicated to the public in plat two of West Hill and except Lots 10, 11, and 12, Block 1; Lots 21 and 35, Block 3; and Lot 4, Block 9 of West Hill which were retained by James D. Cave and his wife Josephine Cave.

. In July of 1962, Robertson sold the first ten lots in the subdivision to Donald H. Lueder, a home builder, at a price of $2,800.00 per lot, under a contract which required Lueder to build on the lots and promote the Addition. Lot sales progressed from this time until June of 1964, with prices ranging from $3,200.00 to $3,470.00 per lot. All sales were effected through Robertson's Inc., a family corporation controlled by James Robertson.

Lueder built and sold a total of eighteen homes all being situated along 2nd West Hill Drive. The first of such homes was sold in November of 1962, the last in December of 1964, and all were occupied. From the time of the sale of the first home until after the start of construction on the interstate highway, all access from the county road on the northeast of West Hill into the Addition via the platted streets 1st and 4th West Hill Drives was completely blocked and the only access into West Hill from the public network of streets and roads was either, (1) via U. S. Highway 91 and University

Avenue across the proposed interstate highway strip on the City's utility easement to 1st West Hill Drive, or (2) via the county road known as old U. S. 91 to a turnoff point just east of the Addition, thence, across the middle of the proposed interstate highway strip to 1st West Hill Drive. Both of such routes were visible on the terrain and were the only means of ingress to, and egress from, West Hill.

The developers, James Robertson and James D. Cave, had, for years preceding April 1962, been equal owners in a corporation engaged in the general construction business known as Robertson & Cave, Inc. The assets of this corporation were divided in April 1962, simultaneously with the liquidation of C & R Sales and Service. James D. Cave continued in the construction business as Cave Construction, Inc., and James Robertson continued in the construction business in a new corporation which he formed known as Robertson & Blossom, Inc., and in which he and his immediate family owned ninety percent of all outstanding shares.

On or about January 8, 1964, James Robertson conveyed to his corporation, Robertson & Blossom, Inc., the unplatted 10.42 acres carved out of the subdivision for highway purposes. This conveyance was recorded. At the same time, and as part of the same transaction, Robertson extracted an agreement from Robertson & Blossom, Inc., under the terms of which Robertson & Blossom, Inc., agreed that it had notice of the two access routes crossing the unplatted tract as a means of ingress to, and egreess from, West Hill; agreed to permit the continued use of such roads or routes by the owners of property in West Hill, their heirs and invitees, and agreed to maintain such roads. Robertson & Blossom, Inc., further agreed to stake out and plat a permanent sixty-foot right of way across such tract, grade and pave the same and dedicate the same as a public street, at which time such public way would substitute for the private rights of way and the private right of way user would terminate. Finally, Robertson & Blossom,

Inc., agreed that should it fail to perform its agreement, it could forfeit its interest in the unplatted tract and reconvey to Robertson. This agreement was made expressly for the benefit of the property owners in West Hill, *but was not recorded.*

On September 28, 1964, the State Highway Commission passed a resolution of public interest and necessity, seeking condemnation of approximately 7.70 acres of an unplatted strip containing approximately 10.42 acres and adjoining the platted portion of West Hill on the west. On or about October 21, 1964, this action was filed naming as the only defendants Robertson & Blossom, Inc., Great Falls National Bank, Great Falls Gas Co., and the City of Great Falls, Montana. Summons was served on Robertson & Blossom on October 22, 1964.

On November 17, 1964, the original defendants answered.

On or about November 20, 1964, certain of the other defendants named herein moved to intervene in the action instituted by the State Highway Commission on the ground that as owners of property in West Hill they would suffer a deprivation of property, without just compensation, were the taking proposed by the Commission permitted. They intervened alleging interference with and the taking of their right of ingress to, and egress from, their property in West Hill via roads across the strip proposed to be taken.

Hearing was had on the motion to intervene on November 24, 1964, at which time the intervention of all defendants presently named and not originally named was allowed and additional time to answer afforded. On the same date, the court made a preliminary order of condemnation from which consideration of crossings over the interstate route, access thereto and the question of whether the intervening defendants had suffered a compensable loss of property through the taking, were specifically excepted and reserved for further consideration and regulation by the court. Following this order, value commissioners were appointed and a hearing was

had before them on December 23, 1964, in consequence of which they rendered a report on January 11, 1965, awarding Robertson & Blossom, Inc., $17,000.00 for 7.70 acres of the 10.42 unplatted acres taken and $18,200.00 as depreciation for the remaining 2.72 unplatted acres. The land in West Hill as platted was not considered in these proceedings.

On January 25, 1965, the defendants filed notice of appeal from the award of the value commissioners.

On December 23, 1964, the intervening defendants filed their first separate answer which was supplemented by a further separate answer on June 2, 1965.

The State move on February 9, 1965, for separate trials on the matters presented by the original complaints as they involved only Robertson & Blossom, Inc., and the matters raised by the intervening defendants which motion was denied on April 24, 1965. On May 3, 1965, plaintiff moved to dismiss as to the intervening defendants and this motion was denied on June 2, 1965. The State replied to the supplemental separate answer of the intervening defendants on or about June 23, 1965, and thereafter trial was had.

The respondents Robertson asserted damages under three theories: (1) their lots were part of the remainder of the Corporation's property—a unity of use theory; (2) they had an easement across the Corporation land taken from them; and (3) they were entitled to recover costs expended by or assumed by them in "mitigating" damages.

The issues presented for review are set forth as:

(1) In a condemnation action brought by the State of Montana, wherein the State sought to acquire a portion of land owned by Robertson and Blossom, Inc., is the State liable in damages to James and Betty Robertson, owners of land adjacent to that being taken but no part of which was taken, under the theory that as a matter of law such individually owned and corporate owned property was a unit? Was the court's Instruction No. 40 error?

(2) In this action, did James and Betty Robertson own a valid existing easement through the land taken owned by Robertson and Blossom, Inc., which as a property right would support an award for damages for the property taken and damages to their individually owned lots adjacent to the land owned by Robertson and Blossom, Incc.? Was the court's Instruction No. 41 error?

(3) In a condemnation action to acquire land owned by Robertson and Blossom, Inc., is the State liable in damages for amounts of money expended by James and Betty Robertson, former owners of the land being taken, to replat and regrade the land taken and other land adjacent to that taken prior to the initiation of the condemnation suit?

(4) In a condemnation action, is the State liable in damages to the subdividers of property adjacent to that being taken for the costs of water and sewer, and also the potential costs of paving a roadway adjacent to the land being taken?

(5) Are the costs mentioned in 3 and 4 mitigating damages? Was the court's Instruction No. 43 error?

(6) Was the evidence presented sufficient to support an award under issues 3 and 4?

(7) Did the court err in refusing to give the State's proposed Instruction No. 16?

(8) Was the court in error in overruling the motion to dismiss of the State of Montana?

Certain instructions given with objections and comments are set forth as follows:

"INSTRUCTION NO. 40. You are instructed that there was unity of use between the land in the 10.42 acre tract adjoining the West Hill Addition and the lots in the West Hill Addition owned by James Robertson. As a result, in determining the damages to be awarded to James Robertson you must consider his lots in West Hill and the 10.42 acre tract as one parcel. This being the case, in computing damages, you must award the market value of the 7.70 acre strip at the time of

taking to the defendant Robertson and Blossom. You must then determine the difference, if any, between the fair market value of the 2.72 acres remaining in the 10.42 acre tract and the lots owned by James Robertson in West Hill before and after the taking and award the resulting sum between Robertson and Blossom and James Robertson as their interests appeared on October 22, 1964.

"MR. SULLIVAN: We object to the giving of defendants' instruction 4-A upon the grounds and for the reasons that this instruction makes the determination of unity of use a Court function when in fact the law of the State of Montana requires that this be a jury function; that there is no showing of unity of ownership between Robertson and Blossom, Inc., and James Robertson when unity of ownership is a necessary element and component to justify a unity of property; that there is no showing of any kind that the holding of the lots for sale is for a unified use of these lots; that the evidence here does not show and would not support an instruction as here proposed that these properties are so connected in the use to which they are applied that the injury or destruction of one must necessarily and permanently injure the other. That whereas the properties might be devoted to a common purpose that this is not of itself sufficient to fuse the separate tracts; that the parcels do not form an integrated unit, and that they are not used in conjunction with each other; that there is no connection or relation of convenience and actual and permanent use between all of these separate lots to show that the enjoyment of any of the parcel taken not owned by the owners of the lots is reasonably and substantially necessary to the enjoyment of the remaining individual lots in their most advantageous and profitable manner.

"Objection overruled and instruction given as Instruction No. 40."

"INSTRUCTION NO. 41. An easement is a property right protected by constitutional guaranties against the taking of

private property without just compensation. A private right-of-way is an easement and an easement is land. The State of Montana is liable to the owner of an easement appurtenant in a suit condemning the fee of the servient estate.

"You are instructed that the defendants who own property in the West Hill Addition had easements appurtenant to their property in the nature of private rights of way across the servient estate of 7.70 acres which have been taken by the plaintiff in these proceedings. Private property of these defendants has thus been taken and they are individually entitled to damages for such taking in an amount equal to the difference between the fair market value of their respective properties before the taking and the fair market value of their respective properties after the taking.

"MR. SULLIVAN: We object to the giving of defendants' instruction No. 7 on the grounds and for the reasons that as a statement of law concerning easements it is an incomplete statement of the law because of the fact that it does not set out the necessary requirements or procedures to establish an easement; that without setting these necessary procedures or requirements out the Court is now asked to instruct as a matter of law that an easement exists here, that there is no property right in a street or a public roadway owned by individual persons whose individual property is not adjacent to such street or roadway; that there is no evidence in this case showing that the necessary time of five years to establish a presumptive easement has been satisfied and in fact the evidence is to the contrary that no person could have used the property for over four years prior to the State Highway taking; that there is nothing in the instruction that shows an easement could have been established by deed or contractual right; that the evidence does not indicate that the State of Montana had any notice of any contractual rights by any persons in this property, and that there was no recorded easement by grant.

"THE COURT: Overruled and given. In the Court's opinion there is a duty upon the State to ascertain certain things; they had visual notice and notice in the record of the right of Robertson over the land to the University Addition, that Robertson had an agreement with Robertson and Blossom for the benefit of the owners for means of ingress and egress, while this was not of record the State cannot claim it is a purchaser in good faith where they are put on notice and have means of inquiry and didn't make any inquiry."

"INSTRUCTION NO. 43. An owner whose property is being taken or *damaged by public authority is under a duty* to take all reasonable steps available to minimize his loss; and, expenses which an owner reasonably and in good faith incurs in an effort to minimize his loss are to be taken into account in computing the just compensation to be paid him in a proceeding in eminent domain.

"If you find, therefore, from a preponderance of the evidence, that the defendant James Robertson, acting in anticipation of the taking and acting under a belief that his acts would avoid or reduce the damages to be sustained by the taking, thereupon, in good faith and with reasonable prudence, skill and efficiency replatted, regraded and relocated facilities pertinent to the West Hill Addition, you may consider the expenses so incurred by him as a further diminution of the fair cash market value of that portion of his property not sought to be condemned but injuriously affected by the taking to the extent that you find the same was necessitated by the taking and to the extent that you find the same to be reasonable. (Emphasis Supplied.)

MR. SULLIVAN: To which the State objects on the grounds and for the reasons that while mitigation of damages would be required of an owner or would be required of the State that the State is not the insurer and not liable and not responsible in damages to an owner who in furtherance of his own private business ventures goes forward with those ventures and incurs

costs and expenses on other property not within the area of the land being taken by the State or not within the land taken by the State; that were this to be held the State was the insurer the State would have no control over what a person would want to expend. We further object on the ground that the mitigation of damages, if any are asserted, must take place subsequent to the taking by the State of Montana, and that expenses incurred at a prior time to do whatever an individual or a corporation would want to do on private land prior to the taking by the State of Montana do not necessarily comprise an element of the value of the land, they do not go to a determination of the fair market value and they are not protected nor is the State liable in damages for the expenses incurred prior to the taking in a condemnation case.

"Objection overruled and instruction given as Instruction No. 43."

"INSTRUCTION NO. 16. Every conveyance of real property, other than a lease for a term not exceeding one year, is void against any subsequent purchaser or encumbrance, including an assignee of a mortgage, lease, or other conditional estate, of the same property or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded.

"MR. BURTON: Defendants object to the giving of plaintiff's instruction No. 16 on the basis it does not reach the issues and merits of this dispute and might tend to confuse the jury.

"Objection sustained; instruction refused."

By Instruction No. 40, the court, as a matter of law, determined that the lots owned individually by Robertson comprised part of the remainder of the land being taken from the Corporation. It is clear that these were two distinct legal entities. The testimony was that the Corporation received the property by recorded deed for the purpose of, among other things, increasing its bonding capacity. Robertson, on the other hand, kept the platted lots for the purpose of sale. In deter-

mining what is the "remainder" of the property taken, R.C.M. 1947, section 93-9912(2), provides:

"(2)   If the property sought to be appropriated constitutes only a part of a larger parcel, the depreciation in value which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned   *   *   *."

■   To determine what is "the remainder" so as to determine what constitutes the unit of property affected, there are generally three tests: (1) same ownership, (2) contiguous, (3) unity of use. Here the property was contiguous and no issue is made. The appellant urges that since Robertson and the Corporation were two distinct owners, the instruction given was improper. This is correct.

■ ■   As to the ownership, one would have to disregard the Corporation, treat it as a fiction and treat Robertson's lands as part of the Corporation land. Robertson created the Corporation in order to enjoy advantages flowing from its existence as a separate entity. He deeded to it without reservation of record. He held out to the public, and particularly to the State of Montana, the entity of the Corporation. He cannot now ask that such existence be disregarded when it works to a disadvantage to him. (See 95 A.L.R.2d 880. annotation of Jonas v. State, 19 Wis.2d 638, 121 N.W.2d 235).

This same reasoning applies to the unity of use phase of the trilogy. Robertson held the lots individually for sale. They were inventory in that sense and were not used by the Corporation or in its business. Instruction No. 40 was therefore improper.

■ ■   The next issue is the trial court's declaration in Instruction No. 44 that Robertsons had an easement over the land being taken. Previously it has been shown that Robertsons deeded the land without any reservation of record. They did have a private contract with the Corporation. If this contract right was interfered with, the Corporation might well

have been damaged to the extent that it was liable to Robertsons, but here the Corporation has not appealed. It has been represented by the same counsel as respondents Robertson. For all that appears, the Corporation was fully recompensed for all damages including the contract obligation to Robertsons. The trial court was in error in stating in effect that the State Condemnor cannot rely on the record title. The State filed its notice of lis pendens. It knew that no possible prescriptive right, so far as Robertsons were concerned, could have arisen.

R.C.M.1947, Section 73-202, provides: *"Conveyances to be recorded, or are void, etc.* Every conveyance of real property, other than a lease for a term not exceeding one year, is void against any subsequent purchaser or encumbrancer, including an assignee of a mortgage, lease, or other conditional estate, of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded." Clearly here, the State was entitled to rely on the record ownership.

Thus, Instruction No. 16, offered by the State, as to voidness of a conveyance of real property if not recorded, was a proper instruction and should have been given. Respondents Robertson make much of the knowledge of the State as to the visibility of the roads, etc. By the same token, Robertsons knew of the State's taking, as shown before; and with that knowledge still conveyed the property without reservation of record as late as January, 1964.

Finally, so far as respondents' theories are concerned, costs expended or assumed in "mitigating damages" are asserted. Instruction No. 43, quoted heretofore, is the basis for Specifications 3 and 4. The State contends that items asserted to be mitigating costs were not such as to be compensable.

Heretofore, we have set forth the efforts at replatting and the loss in lots, access, grading, etc. All of these facts are

from the viewpoint of the respondents Robertson. From the chronology of dates, it is seen that over an eight year period prior to the taking, all of this activity occurred. None of it occurred on the part taken. Again, we are in the awkward position of not having an appeal by the Corporation. Instruction No. 43 presupposes that Robertsons owned something being condemned. This they did not.

In Bakken v. State Highway Commission, 142 Mont. 166, 382 P.2d 550, an action was brought against the State because loss of value was asserted to have occurred to certain property because of a contemplated taking or routing. We held that such an "inverse condemnation" would not lie. The expenditures here claimed were in furtherance of the business interests of Robertson and Cave, Inc., who then owned the land. Robertson and Cave, Inc., was a predecessor of Robertson and Blossom, Inc. In explaining why the replatting was made, Mr. Cave testified:

"Q. What did you and Mr. Robertson decide to do? A. We had a meeting over it, we decided our best bet was not to file this plat because we were working for the State Highway and might be bidding on this job, that our best bet for everybody concerned was to replat the thing."

Then later, Robertson explained why the unplatted portion was conveyed to the new corporation, as follows:

"Q. At one time no one owned it but you? A. I turned it over to the company in order to get our loan and bond values up.

"Q. You transferred the real estate and stock to your own corporation? A. I took stock for it.

"Q. You own ninety percent of the stock? A. Right.

"Q. You did not get any money for the transfer? A. No.

"Q. What was the purpose of the transfer? A. Just for our bonding power and borrowing power so we could continue in the contracting business."

This illuminating testimony shows the transaction. The

transaction was for the business purposes of the parties and not to "mitigate damages" in any sense. But, even if they were, the rule in Bakken would apply. Therefore, the so-called "mitigating costs" theory fails too.

The instructions given were erroneous. The State was entitled, as a matter of law, that Robertsons as parties, should have been dismissed from the lawsuit because they did not have a claim upon which relief could be granted.

The judgment awarding damages to Robertsons is reversed and the cause is dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN CONWAY HARRISON, concur.