**UNITED STATES of America,**
**Plaintiff,**

v.

**CERTAIN PARCEL OF LAND IN JACK-SON COUNTY, MISSOURI, Wyandotte-Central Corporation, et al., Defendants.**

**No. 15918-1.**

United States District Court,
W. D. Missouri, W. D.

Jan. 14, 1971.

David M. Proctor, Jr., Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Frank P. Sebree, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

This is a condemnation action in which Parcel Number 131, a parking lot of 17,-220 square feet in downtown Kansas City, Missouri, was taken from the defendant Wyandotte-Central Corporation. That corporation also owned a contiguous parcel of land comprising 16,-040.6 square feet which adjoined Parcel No. 131 on the south. Both parcels fronted on Central Street north of 16th Street. Before the Government's acquisition the north 34 feet of the subject property was rented to a private company for private use. All of the remainder of the property was rented to a public parking lot operator for public use.

The defendant corporation, as well as the Sixteenth Street Corporation and Mid-Town Development Corporation were wholly owned subsidiaries of the Atlas Acceptance Corporation. The majority of the stock of Atlas was owned by General Harold L. Oppenheimer and certain close relatives of his. Those individuals also owned a majority of the stock of Airport-Auditorium Motel Corporation. At the time Parcel No. 131 was taken, the associated Oppenheimer companies owned or held options to buy (later exercised) various other tracts in

the general vicinity of Parcel No. 131. It is clear that the Oppenheimer interests intended at some future time to consolidate all of the tracts described into an urban redevelopment project under provisions of Missouri law.

After appropriate pretrial procedures, the parties entered into a stipulation in which the following legal questions were submitted to the Court without a jury:

1. Whether immediately before the taking of Parcel No. 131 by plaintiff on March 9, 1966, there was a reasonable probability that other tracts of land either not owned by the defendant Wyandotte-Central Corporation or by parties closely affiliated with said defendant, could be combined therewith for an urban redevelopment project through the exercise of the power of eminent domain by an urban redevelopment corporation organized under Chapter 353, V.A.M.S.; and, if so, (a) whether such power of eminent domain can be considered as a factor in determining the issue of just compensation for the taking of Parcel No. 131; and (b) whether the exemption from, or reduction of, general ad valorem taxes on land within such an urban redevelopment project (as provided in Section 353.110, V.A.M.S.) can be considered as a factor in determining said issue of just compensation?

2. Whether on March 9, 1966, there was a reasonable probability that the tracts of land listed in Exhibit A (attached hereto and made a part hereof), or any of them, could be acquired within the reasonably near future either by the defendant Wyandotte-Central Corporation, or by Atlas Acceptance Corporation, or by any corporate subsidiary of the latter?

3. Whether on March 9, 1966, for the purpose of assessing severance damages, if any, the land more particularly described as the south 37.5 feet of Lot 47, all of Lots 48, 49, and 50 and the north 15 feet of Lot 51, Block 4, J. H. McGee's Addition, a subdivision in Kansas City, Jackson County, Missouri, was a "single tract" to the exclusion of any other property?

4. If the answer to the preceding question is in the negative, then what other tract or tracts of land shall be considered as a "single tract" along with the tract of land described in the preceding question, for the purpose of assessing severance damages, if any?

A plenary evidentiary hearing was held on November 24, and 25, 1970, at which the Court received evidence on the stipulated issues. During the course of that hearing three additional legal questions came into focus. The parties therefore entered into a supplemental stipulation in which they agreed that the following three additional legal questions be submitted for preliminary determination:

5. Whether the special issues submitted to the Court in Court's Exhibit No. 1, or any of them, are issues for the trial judge to decide finally before, and exclusive of, the submission of the general issue of just compensation to a jury?

6. Whether testimony given by a person other than a landowner or his authorized agent may be admissible in evidence for any purpose to prove or to tend to prove that such landowner would sell his property at a certain price to another within a reasonable time; and

7. Whether admissible for any purpose is so much of the testimony of Harold L. Oppenheimer, Lee Barewin, and William A. Hutchings at the plenary hearing held herein on November 24 and 25, 1970, as gave the responses of the respective landowners to attempts of the former to purchase for, or on behalf of, the defendant Atlas Acceptance Corporation, or any corporate subsidiary of the latter, the properties listed in paragraph A of Court's Exhibit No. 1?

The special issues submitted under the two stipulations will be determined in the order of their submission.

## I.

In regard to the first issue submitted we find and conclude (a) that the power of eminent domain can *not* be considered as a factor in determining the issue of just compensation for the taking of parcel No. 131; and (b) that the exemption from, or reduction of, general ad valorem taxes on land within an urban redevelopment project can *not* be considered as a factor in determining such issue of just compensation.

United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943), is controlling. Indeed, the factual situation presented in this case is at least one or two steps beyond that presented in *Powelson*. In *Powelson*, the landowner in fact was vested with the power of eminent domain. In this case the stockholders of the defendant had only the hope that some day property owned by the defendant would, at some indefinite future time, become a part of the property of an urban redevelopment corporation, which, under applicable State law, would be vested with the power of eminent domain.

But, even if it could be assumed that defendant in fact possessed such a power, the principles articulated in *Powelson* forbid the consideration of such a factor in the determination of the issue of just compensation. *Powelson* explicitly states that the "privilege to use the power of eminent domain may not be considered in determining whether there is a reasonable probability of the lands in question being combined with other tracts * * * in the reasonably near future" (319 U.S. at 285, 63 S.Ct. at 1057). That case further concluded that "profits, attributable to the enterprise which respondent hoped to launch, are inadmissible as evidence of the value of the lands which were taken;" that the landowner is "of course, entitled to the market value of the property fairly determined;" and that such "value should be found in accordance with the established rules (United States v. Miller, *supra* [317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1942)])—uninfluenced, so far as practicable, by the circumstance that he whose lands are condemned has the power of eminent domain" (Ibid, at 285, 63 S.Ct. at 1058).

The principles stated in *Powelson*, we believe, make it obvious that (a) the possibility that the defendant or its stockholders might, at some undetermined future date, actually obtain the power of eminent domain; or (b) the possibility that the urban redevelopment project might also be granted an exemption or reduction of general ad valorem taxes may not properly be considered as factors in the determination of the issue of just compensation. We are convinced that the admission of any evidence concerning either factor would taint any award eventually granted in this case.

Defendant complains about the "unfairness" of the rules stated in *Powelson* (Df. Br. p. 2). It argues that "the Government in this case took land from the Oppenheimer interests that was a part of an urban renewal project [and that] in fairness, the Government should pay the Oppenheimer interests for the value of the land taken based upon its value to that project." (Df. Br. p. 4). This Court, of course, can not properly refuse to apply a rule of law simply because it may think it to be unfair. It is under duty, however, to point out that the substance of defendant's unfairness argument was presented to and rejected by the Supreme Court in *Powelson*.

That case recognized that the Government's condemnation proceeding in fact "frustrated respondent's plan for the exploitation of its power of eminent domain." That case concluded, however, that "No reason based on precedent or principle appears why respondent's privilege to use the power of eminent domain should be treated as 'private property' within the meaning of the Fifth Amendment so as to give rise to a private claim against the public treasury" (Ibid at 283, 63 S.Ct. at 1057).

Defendant directs our attention to no precedents in support of its contention.

Nor does it state any reasons to support its claim that it is not being fairly treated by the Government. *Powelson* cited and relied upon the long line of cases which make defendant's claim of "unfairness" untenable. That case stated:

We may assume that that privilege [to exercise the power of eminent domain] was a thing of value and that this frustration of the plan means a loss to respondent. But our denial of compensation for that loss does not make this an exceptional case in the law of eminent domain. There are numerous business losses which result from condemnation of properties but which are not compensable under the Fifth Amendment. (Ibid at 281, 63 S.Ct. at 1055).

The Supreme Court stated that this point was "well illustrated by two other lines of cases in this field" (ibid at 281, 63 S.Ct. at 1056). In regard to the first line of cases, it stated:

It is a well settled rule that while it is the owner's loss, not the taker's gain, which is the measure of compensation for the property taken (United States v. Miller, *supra*; United States v. Chandler-Dunbar Co., *supra*, 229 U.S. [53], page 81, 33 S.Ct. [667], page 678, 57 L.Ed. 1063; Boston Chamber of Commerce v. Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L. Ed. 725), not all losses suffered by the owner are compensable under the Fifth Amendment. In absence of a statutory mandate (United States v. Miller, *supra*, 317 U.S. page 376, 63 S.Ct. [276], page 281, 87 L.Ed. 336) the sovereign must pay only for what it takes, not for opportunities which the owner may lose. (Ibid at 281–282, 63 S.Ct. at 1056).

In regard to the second line of cases, the Supreme Court stated:

It is well settled in this Court that, "Frustration and appropriation are essentially different things." Omnia [Commercial] Co. v. United States, *supra*, 261 U.S. 502, page 513, 43 S.Ct. 437, page 439, 67 L.Ed. 773.

Thus in Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, the owner was denied compensation for the destruction of his business which resulted from the taking of his land for a public project even though the business could not be reestablished elsewhere. This Court, after noting that "settled rules of law" precluded a consideration of "consequential damages" for losses of a business or its destruction, stated: "No recovery therefor can be had now as for a taking of the business * * *. If the business was destroyed, the destruction was an unintended incident of the taking of land." 267 U.S. p. 345, 45 S.Ct. p. 294. (Ibid at 282–283, 63 S.Ct. at 1056).

Further discussion of the first issue would be redundant.

## II.

■ In regard to the second issue submitted it can only be determined at the present time that the defendant did not adduce sufficient substantial evidence at the evidentiary hearing to warrant the submission to a jury of whether, on March 9, 1966, there was a reasonable probability that the particular properties then owned by others could have been acquired within the reasonably near future by either the defendant, by Atlas, or by any other corporate subsidiary of Atlas.

■ The defendant concedes that "It is not enough to show it was *possible* to combine the tract in question with other tracts" (Df. Reply Br., p. 12). Yet defendant, although afforded full opportunity, elected only to call witnesses other than the owners of the particular property involved to establish the essential element of probability, as distinguished from a mere possibility. In anticipation of a possible adverse ruling on the sixth and seventh submitted issues, defendant has requested that it be afforded "an opportunity to cure the defect in its evidence by calling the property owners" (Df. Reply Br., p. 14).

We see no reason why defendant's request should not be granted, provided it does not further delay the trial of this case. The purpose of all pretrial and trial proceedings is to ascertain the true factual circumstances of a particular case in order that the applicable rules of law may be properly applied. Our order directing further proceedings will accordingly set this case for further hearing for the purpose of affording the defendant the opportunity of calling all the property owners of the Friedburg, Brunk, Ehinger and Bradford Hotel tracts. There obviously is no reason to hear any other witnesses.

In light of the fact that additional evidence will be received on the highest and best use issue involved in the second submitted issue, we deem it appropriate to give counsel the benefit of our general view of the principles of law which will be applied to the question presented.

We recognize, of course, that in *Powelson* it was "practically conceded that the acquisition of all the property * * could not, in all reasonable probability, be accomplished without resort to the power of eminent domain" (319 U.S. at 274, 63 S.Ct. at 1052). But *Powelson*, at least by way of dictum, considered the question of probability of acquisitions of property owned by others independent of the use of the power of eminent domain. In that regard, *Powelson* stated that "If the power of eminent domain be left out of account, the chances of making the combination appear to be too remote and slim 'to have any legitimate effect on the valuation', McGovern v. New York, *supra*, 229 U.S. [363], page 372, 33 S.Ct. [876], page 877, 57 L.Ed. 1228." (Ibid. at 285, 63 S.Ct. at 1057). Page 372 of 229 U.S., page 877 of 33 S. Ct. reporting *McGovern* (to which *Powelson* directed specific attention) noted that "the enhanced value of the land as part of the Ashokan reservoir depends upon the whole land necessary being devoted to that use." The Supreme Court then stated that:

There are said to have been hundreds of titles to different parcels of that land. If the parcels were not brought together by a taking under eminent domain, the chance of their being united by agreement or purchase in such a way as to be available well might be regarded as too remote and speculative to have any legitimate effect upon the valuation.

■ Perhaps the owner of the Friedburg and the owners of the other tracts of unacquired property will testify that they were in fact willing to sell their property for the prices offered by the defendant in the reasonably near future after March 9, 1966. We have determined that defendant cannot make that requisite proof by having its own officers and employees testify to what the owners of the other property may have said to them.

In the event defendant determines that it wants to adduce the testimony of the owners in regard to the question presented under the second stipulated issue, we will hear that testimony and thereafter determine whether defendant's new evidence is sufficient to take the question of the unacquired tracts to a jury on the highest and best use issue. Counsel's attention, however, is directed to the following statement by Judge Carter in United States v. 70.39 Acres of Land, etc. (S.D.Cal.1958) 164 F.Supp. 451, at 476:

In determining the question of law as to whether a sufficient showing is made of the "reasonable probability," the court will want to hear *facts* and not some expert's ultimate opinion about the very problem the court is to decide. * * * What we are stating is that we will not hear experts give their opinion that there is or is not the required "reasonable probability."

The principles implicit in that statement will be applied by this Court in connection with all further proceedings, both pretrial and trial, in regard to the Friedburg, Brunk, Ehlinger, and Bradford Hotel tracts.

## III.

In regard to the third issue submitted we find and conclude that for the purpose of assessing severance damages, if any, only the land more particularly described in the stipulated issue may be considered as a "single tract," within the meaning of the applicable law.

■ *Powelson*, at page 285 of 319 U.S., at page 1058 of 63 S.Ct., commands that the established rules articulated in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), be applied to this case "uninfluenced, so far as practicable, by the circumstance that he whose lands are condemned has the power of eminent domain." *Miller, supra*, at 375–376, 63 S.Ct. at 281, points out that one of the working rules adopted to do substantial justice in eminent domain proceedings requires "that a parcel of land which has been used and treated as an entity shall be so considered in assessing compensation for the taking of part or all of it."

■■ *Miller* established the following "subsidiary rules" which are applicable to this case:

If only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. Such damage is often, though somewhat loosely spoken of as severance damage.

\*    \*    \*    \*    \*    \*

As respects other property of the owner consisting of separate tracts adjoining that affected by the taking, the Constitution has never been construed as requiring payment of consequential damages; \* \* \*. (Ibid, p. 376, 63 S.Ct. p. 281).

The Government, by its designation of tract No. 131 in this condemnation proceeding and by stipulation, has conceded that the south 37.5 feet of Lot 47, all of Lots 48, 49, and 50, and the north 15 feet of Lot 51 may be considered as with a single tract for severance damage purposes. Defendant, on the other hand, contends that all property controlled by defendant's stockholders and, in addition, all the unacquired property mentioned in the stipulation should be considered as a part of a single tract for severance damage purposes.

■ Defendant, however, candidly concedes that its contention in regard to severance damages rests upon the validity of its explicit assumption that the rules and standards applicable to the determination of the highest and best use of a particular tract should be applied to the determination of the issue of whether severance damages should be awarded in a particular case. Defendant states flatly on page 12 of its original brief that "we submit that if the properties in dark green may be considered together for purposes of determining the highest and best use, they should likewise be considered together for determining severance damages." And on page 11 of its reply brief, defendant states its legal contention that "there is no difference between an assemblage for the purposes of determining the highest and best use of the property condemned and an assemblage for the purposes of determining severance damages." See also page 14 of defendant's reply brief for a reiteration of the same notion.

Defendant's theory in regard to severance damages is untenable. The rules established for the determination of the right to and the amount of severance damages, and the rules established for the determination of the highest and best use of a particular tract of land are of entirely different origin and application. The principles and reasons which support the rules in regard to one set of rules do not apply to the determination of the entirely separate question.

Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903), relied upon in both *Powelson* and *Miller*, is consistently recognized by all authori-

ties as one of the leading severance damage cases.[1]

Section 14.31 of Nichols on Eminent Domain (3rd Ed.), p. 715, devoted to the question of "what constitutes a separate parcel," cites that case many times throughout that section. That section states the long established requirements of "physical contiguity" (ibid, p. 717); "unity of ownership" (ibid, p. 733); and the rules applicable to whether the tract must be in the same "geographical or political subdivision" (ibid, p. 734). Nichols cites both *Sharp* and *Miller* in Section 14.2, p. 508, which relates to "partial taking," to support the general rule that:

Where two physically separate tracts of the same owner are operated as a unit by the owner and only one of such tracts is affected by a partial taking, the unity of operation is not in and of itself sufficient to merit consideration of the second tract as part of the remainder area.

Similar treatment is given *Sharp* in § 315 of Eminent Domain, 27 Am.Jur.2d 134–137, in which it is stated:

It is a fundamental principle that where a portion of a parcel of land is taken for the public use, the owner is entitled to recover for the injury to the remainder of that parcel only, and cannot recover for injury to separate and independent parcels of land which he may happen to own in the same neighborhood.

\*    \*    \*    \*    \*    \*

Contiguous tracts owned by the same person, but used for different purposes and rented to different tenants, should be considered as separate tracts. If both are injured by the taking, it is proper to permit the jury to consider the reasonable market value of each tract. Even if two tracts are contiguous and owned by the same owner and used for the same purpose, if they are not used in connection with each other, they must be considered as separate tracts, as, for example, a block of city houses rented to different tenants for residential purposes. So, the use of lots for different buildings will usually have the effect of destroying their character as a single tract, if the buildings are not used to house a common enterprise, as in the case of a manufacturing plant.

The separate Annotations in 6 A.L.R. 2d 1197 and 95 A.L.R.2d 887 show that both unity of use and unity of ownership

---

1. (Page 12)
   It is interesting to note that in United States v. Miller, footnote 20 on page 376 of 317 U.S., on page 281 of 63 S.Ct., Mr. Justice Roberts cited Nichols Emiment Domain, *Second* Edition, Section 236. The cited section of Nichols was superseded by other sections in the Third Edition of that work. Section 236 of the Second Edition, upon which *Miller* relied, stated the well established principles in the following language:

   It is well settled that, when part of a tract of land is taken for the public use, the just compensation to which the owner is entitled by the constitution includes the damages to the remainder of the tract resulting from the taking as well as the value of the land taken. In other words, the "just compensation" guaranteed by the constitution implies not merely the value of so much land separately from its connection with the whole tract, but the injury or loss to the whole estate caused by taking from it the part which is so appropriated. Compensation is awarded not merely for the property taken, but for the taking of the property. The remaining land is not taken, but the damage to such land results from the taking and must be included when compensation for the taking is reckoned. This distinction is of the utmost importance.

   Sharp v. United States, together with Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270 (1897) and United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165 (1911), are the Supreme Court of the United States cases upon which the Second Edition placed reliance. The sections of Nichols' Third Edition cited in the text of this opinion state the same principles stated in Nichols Second Edition in slightly different language; all of which establishes that we are not dealing with new or recently articulated principles of condemnation law.

must, under ordinary circumstances, be established before severance damages are to be allowed. Neither requirement is pertinent in the determination of the entirely separate question of highest and best use. See § 282 of Eminent Domain, 27 Am.Jur.2d 76–82, in which the principles articulated in *Miller,* Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934), and like highest-and-best-use cases are discussed.

On page 1234 of 6 A.L.R.2d it is correctly stated that "the mere adaptability of noncontiguous property to a unitary use, and the intention of the owner to put it to that use, although often material in the valuation of the property taken, is not sufficient to give entity to the whole." The Annotation in 95 A.L.R.2d, devoted to the necessity of unity of ownership, states in similar manner on page 890 that "Generally speaking, in order to allow severance damages where a portion of a parcel or parcels of land claimed as a single unit is taken by condemnation, there must be unity of ownership between the part taken and the remaining part."

Jonas v. State, 19 Wis.2d 638, 121 N.W.2d 235 (1963), the subject of the Annotation in 95 A.L.R.2d, was written by Judge Thomas Fairchild, presently judge of the Court of Appeals for the Seventh Circuit. Judge Fairchild answered in the negative the question of whether the general rule requiring unity of ownership should be disregarded in a condemnation proceeding. In rejecting the landowner's claim that "corporate fiction" should be disregarded, he stated:

> A corporation is treated as an entity separate from its stockholder or stockholders under all ordinary circumstances. * * * In the present case, those who created the corporation in order to enjoy advantages flowing from its existence as a separate entity are asking that such existence be disregarded where it works a disadvantage to them. We do not consider it good policy to do so. (121 N.W.2d 238, 95 A.L.R.2d 885)

See also the cases cited on this point in the Government's brief and Gossett v. State (Tex.Civ.Ct.App., 1967), 417 S.W. 2d 730, and Montana State Highway Comm. v. Robertson & Blossom, Inc. (1968), 151 Mont. 205, 441 P.2d 181, for similar decisions.

So far as the essential element of unity of use is concerned, the facts are not in dispute. The stipulation of the parties on page 220 of the transcript of November 24, 1970, establishes that at the time of the taking the southern portion of parcel 131 was leased to one tenant for a public parking lot, whereas the northern portion was rented solely for the use of the adjoining landowner on the north, Central Molding Company. The parties further stipulated that "there was no integrated use of this entire 33,000 square feet with any other property whatsoever."

Under the stipulated and undisputed factual situation, it is clear that severance damages must be limited to the southern portion of the subject tract for the separate and independent reasons that there is neither a unity of ownership nor a unity of use with any other property owned by the defendant. We expressly find and conclude that defendant's theory that the same rules apply to the determination of highest and best use and those applicable to the determination of severance damages is untenable.

The three cases cited from the lower courts of New York, cited by defendant in its original brief, involve special statutes and are distinguishable on their respective facts. Nor do those cases support defendant's legal theory. In its reply brief, the defendant relies upon Baetjer v. United States (1st Cir., 1944), 143 F.2d 391, cert. denied 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618. That case does contain language to the effect that a tract physically separated from another tract may, under particular circumstances, be said to constitute a "single tract." The overly broad language of that case states that such a determination is permissible if the di-

vided properties are "put to an integrated unitary use or *even if the possibility of their being so combined in use 'in the reasonably near future'* (United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 276, 63 S.Ct. 1047, 1053, 87 L. Ed. 1390) *'is reasonably sufficient to affect market value.'* McCandless v. United States, 298 U.S. 342, 345, 56 S.Ct. 764, 765, 80 L.Ed. 1205." (143 F.2d at 395).

The author of Annotation in 6 A.L.R. 2d, at 1202, appropriately states that last clause in the quotation from *Baetjer* "should be regarded with caution" for the reason that "Adaptability to a common use, or an intention on the part of the owner to put the property to a common use, is not enough to admit their being treated as a separate subject of damages." The reason why the last clause of *Baetjer* states an erroneous conclusion is because the language quoted from both *Powelson* and *McCandless* was used by the Supreme Court in regard to principles applicable to highest and best use; not severance damages.

See also United States v. Mattox (4th Cir., 1967), 375 F.2d 461, for one of the many cases which refuses to apply the last clause of *Baetjer*. Judge Bell noted in *Mattox* that:

We can agree that the physical proximity and the possibility of an integrated use of two separate tracts would give rise to an additional economic value to each, but it does not follow that the mere proximity or possibility of the integrated use will confer upon the owner a right to severance damages. (Ibid at 463).

He concluded that "Baetjer v. United States, *supra,* does not get the defendant home safe." The other cases cited by defendant in its reply brief are equally beside the point.

■ The long and short of the severance damage question is that *Powelson* requires that this Court apply the established rules as stated in United States v. Miller, "uninfluenced, so far as practicable," by the circumstance that the stockholders of the defendant may have in fact "assembled" property in the hope that they might one day organize an urban redevelopment project. We cannot ignore the undisputed facts established by the stipulation of the parties that there is neither unity of ownership nor integrated use. Nor is there any evidence that, absent the possibility of acquisition of the power of eminent domain by defendant's stockholders, the defendant's property could be used for any purpose other than that to which it was devoted at the time of the taking. Under the undisputed circumstances, and as a matter of law, only the southern part of the subject tract may be considered as a part of a "single" tract for the purpose of assessing severance damages.

IV.

■ Because the third submitted issue was answered in the negative, it necessarily follows that no other tract or tracts of land may be considered as a "single tract" in addition to the land described in submitted issue 3. We so find and conclude as a matter of law. We simply cannot permit evidence to be adduced which would contradict the stipulations of the parties in regard to the elements of unity of use and unity of ownership.

The rationale of United States v. Mills (8th Cir., 1956), 237 F.2d 401, is not to the contrary. See United States v. 26.81 Acres of Land, More or Less (W.D. Ark., 1965), 244 F.Supp. 831, for an example of a case in which the district judge, applying *Mills,* found as a matter of law that the two tracts there involved could not, as a matter of law, be considered as a single tract. We recommend study of Judge Miller's opinion in that case as an excellent opinion in which the leading severance damage cases are cited and properly analyzed.

V.

The fifth issue submitted (under the supplemental stipulation filed December

4, 1970) related to which and when each of the other submitted issues should be decided as a matter of law. The parties are agreed that the first issue should be decided as a matter of law. We have done so.

We have already concluded that the defendant will be afforded the opportunity to call the owners of the unacquired property on the second issue. We have, of course, determined as a matter of law that the testimony that the defendant adduced at the first evidentiary hearing was not of sufficient substantiality to support the finding requested by the defendant. If the testimony of the owners of the unacquired property is no more substantial than the hearsay testimony adduced at the first evidentiary hearing, there is grave doubt about whether a jury question will have been made. We, of course, can not rule that question until we hear the additional testimony.

We have decided the third and fourth issues as matters of law. No further evidence can be received in regard to those issues in light of the stipulations already of record.

The fifth and sixth issues are related to the second issue. We have, in effect, sustained plaintiff's objection to the particular testimony involved in that question for reasons we now state.

## VI and VII.

In regard to the sixth and seventh issues submitted we find and conclude that a person other than a landowner or his authorized agent cannot adduce evidence that such landowner would have sold his property at a certain price to another within a reasonable time after March 9, 1966. We further find and conclude that the testimony of the witnesses named in the seventh issue submitted is not admissible for any purpose thus far suggested by the defendant. Generally speaking, all the testimony covered by both issues related to particular offers to sell or offers to purchase, none of which were ever, within a reasonable time after March 9, 1966, accepted by any of the parties involved.

The cases establishing the almost universal rule that offers are inadmissible are collected in Section 21.4, pp. 21–115 of Nichols on Eminent Domain (3rd Ed.). See also the Annotation entitled "Unaccepted offer for purchase or sale of real estate as evidence of value," 7 A.L.R.2d 781, 784, which collects the cases which establish the general rule that "mere unaccepted offers to purchase or to sell that or similar property at a certain price" are inadmissible in a condemnation proceeding. Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903), already cited in another connection, is recognized by all of the authorities as a leading case in the field. We are, of course, under duty to follow that case and its rationale.

The only condemnation cases cited by the defendant are from Missouri. Those cases make detailed discussion of the question presented redundant. State ex rel. State Highway Comm. v. Thurman (St.L.Ct.App. 1968), 428 S.W.2d 955, the latest Missouri case relied upon by defendants, points out that what was said in City of St. Louis v. Vasquez (Mo.Sup. Ct., 1961), 341 S.W.2d 839, (defendant's other case) did not mean "that the landowner could testify as to the *amount* of the offers, as such testimony would not be proper, at least when not testified to by the offeror, as such testimony, as evidence of value, would be hearsay and could open the door to collusion and fraud." Unless the amounts of the various offers are admissible, the most the testimony would establish would be that the parties were in fact in negotiation.

Defendant concedes that "the mere *fact* of negotiation (for additional properties) does not itself, establish the probability that a purchase could be consummated within the reasonably near future." (Df. Reply Br., p. 2). Further discussion would be redundant.

## VIII.

For the reasons stated, it is

Ordered that, in accordance with defendant's request, a further pretrial evi-

dentiary hearing be held in this case on Monday, January 25, 1971, at 9:30 a. m., at which time defendant will be permitted to call as its witnesses the owners of the Friedburg, Brunk, Ehinger, and Bradford Hotel tracts. It is further

Ordered that should the defendant change its mind about wanting any further pretrial evidentiary hearing for the purpose requested in its reply brief, a final pretrial conference will be held on January 25, 1971, at 9:30 a. m., in order that this case may be tried shortly thereafter.