No. 12172

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE HIGHWAY COMMISSION et al.,

Plaintiff and Appellant,

-vs-

EDMOND W. RENFRO et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellant:

Daniel J. Sullivan argued and Donald A. Douglas,
appeared, Highway Legal Dept., Helena, Montana.

For Respondents:

Corette, Smith and Dean, Butte, Montana.
Kendrick Smith argued, Butte, Montana.

---

Submitted: September 21, 1972

Decided: JAN 19 1973

Filed: JAN 19 1973

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment for the defendants on a jury verdict in the district court of Beaverhead County in a condemnation proceeding brought by the state highway commission. The appeal questions only the award of $86,000 for depreciation in market value of the remainder of defendants' land by reason of the taking and construction of the highway. No question is raised by the highway commission in this appeal to the award of $29,000 as the market value of defendants' land actually taken for the highway right of way.

From the testimony at trial, it appears the ranch property located in Beaverhead County near Red Rock, Montana, consisted of three separate tracts of land which were not physically adjoining, but which were connected by the Bell Canyon road. The total acreage of the ranch, including deeded and leased land, was approximately 3,934 acres. Two of the tracts consist of deeded land, together with state lease and federal range land. The third tract contains no deeded land, but consists entirely of state lease and federal range land. The largest tract contains about 3,294 acres and could be considered the "home place". This is the tract through which the interstate highway will run. The distance from the home place to the next tract is about two miles west, and the third tract is about 1.5 miles west of the second tract. The two smaller noncontiguous tracts were used two months out of the year as summer range.

For convenience in this opinion, we will hereinafter refer to the parties as landowners and Commission, and the land parcels as #1 for the home place, #2 for the first tract west, and #3 for the second tract west, as portrayed on the map furnished the Court.

The highway right of way transverses parcel #1 in such a manner as to separate the unit into two parcels with no access for six and one-half miles and the only passage from one parcel to the other is through an eight foot drain pipe at Bell Canyon under the

highway right of way. Three witnesses and the landowners testified that cattle would not go through this drain pipe. This testimony was rebutted and is in conflict. The highway construction also buried an irrigation ditch and there is no provision for bringing water from the source east of the highway to the lands on the west.

The landowners claimed the construction of the highway right of way through the ranch would depreciate the value of the ranch by an amount between $90,000 and $116,000. This reduction in value would be due to a claimed decrease of between 87 and 117 "animal units" to the ranch, which could originally support about 400 animal units. This reduction would be due in part to the impracticability of irrigation and general inaccessability of that portion of tract #1 lying to the east of the highway right of way. There was additional loss claimed due to a change in the character of some land from hay to grazing, resulting from construction. The landowners produced several witnesses who testified to damage to the remainder in parcel #1 in excess of the jury's award.

The landowners further produced evidence that tract #2 and tract #3 which are noncontiguous to each other and to tract #1, are so inseparably connected in use that taking from #1 must necessarily injure #2 and #3, as they operate as one integral unit. The court permitted testimony concerning damage to tracts #2 and #3. The Commission's appraiser did not consider these tracts in his appraisal.

The Commission presents five issues for review. The first four issues are consolidated into one for discussion and the basic question is ---what comprises the remainder of the land, subject to depreciation, by reason of its severance from the part taken? Or, what constitutes the term "a larger parcel" within the meaning of section 93-9912(2), R.C.M. 1947? The question raised in issue five is---may a jury consider testimony for damage awards for "inconvenience", and was there sufficient competent evidence to support the jury award?

Section 93-9912(2), R.C.M. 1947, as it applies here reads:

"If the property sought to be appropriated constitutes only a part of a larger parcel, the depreciation in value which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff." (Emphasis supplied).

The Commission contends this statute does not provide for the inclusion of any noncontiguous remainder land. It cites four Montana cases in support of its position which the trial court used in allowing the jury to consider depreciation of the two noncontiguous parcels #2 and #3, in addition to #1, in arriving at an award for depreciation. The four cases are: Alexander v. State Highway Comm'n, 142 Mont. 93, 381 P.2d 780; State Highway Comm'n v. Robertson & Blossom, 151 Mont. 205, 219, 441 P.2d 181; Lewis & Clark County v. Nett, 81 Mont. 261, 266, 263 P. 418; and State, et.al. v. Bradshaw Land & Livestock Co., 99 Mont. 95, 106, 42 P.2d 674. A brief examination of these cases is in order.

In Alexander, the issue concerned an award for cement batching plant equipment purchased by the state in an eminent domain proceeding. On appeal it was held the award was excessive because it was based on testimony of the owner as to value of equipment not actually found in the plant. Here, the issue concerns an award for depreciation to a ranch operation, due to a reduction in the number of animal units the ranch is capable of supporting.

In Robertson & Blossom, the Court stated:

"To determine what is 'the remainder' so as to determine what constitutes the unit of property affected, there are generally three tests: (1) same ownership, (2) contiguous, (3) unity of use. Here the property was contiguous and no issue is made. The appellant urges that since Robertson and the Corporation were two distinct owners, the instruction given was improper. This is correct."

The issue in Robertson & Blossom was unity of ownership. The issue in the instant case is what constitutes "the remainder"--- only the tract of land from which the right of way was actually taken, or all of the noncontiguous land which was actually put to the same use by the same landowner? It should be noted that

- 4 -

reference to a "general" test or requirement of contiguity in Robertson & Blossom was dicta, since it was outside the issue of the case. Consequently, the fact that this general requirement was mentioned and no exceptions were mentioned does not mean the Court established contiguity as an absolute requirement and recognized no exceptions.

In Nett, the Court stated:

"The measure of damages in a proceeding for the condemnation of land for a public highway, under our statute and similar enactments, is the fair market value of the land sought to be condemned with the depreciation of such value of the land from which the strip is to be taken, less allowable deductions for benefits proven * * * which values are to be determined as of the date of the commencement of the proceeding."

The issue in Nett was whether damages could be awarded to compensate the future cost of maintaining fences. The issue in the instant case is---what constitutes "the land from which the strip is to be taken"?

Finally, we quote from Bradshaw Land & Livestock Co.:

"The theory of defendant cannot be upheld, unless it may be said that all of the lands owned by defendant were a part of the larger parcel from which the right of way was taken.

"In the case of State v. Hoblitt, 87 Mont. 403, 288 Pac. 181, 183, it was said: 'Ordinarily damages may be awarded only for injury done to the particular lot or tract of land from which the right of way strip is taken, and the above rule is applied in ascertaining the award to be made by a determination of the value of the acreage taken, and the depreciation in value of the remainder of the particular tract, regardless of what other lands the owner may possess * * * but, even where two tracts are separated by a highway or watercourse, or, as here, by a railway, if they are used jointly by the owner in a single enterprise and the whole plant is depreciated in value by the proposed improvement, the direct damages suffered may be compensated (30 C.J. 736).' When, however, parts of the same establishment are separated by intervening private lands, they are generally considered as independent parcels. [Citing Cases]

"In the case of Oakland v. Pacific Coast L.Co., supra, the California court said: 'It is insisted, however, that a liberal definition should be given to "parcel," and that unity of use should be regarded as the controlling and determinative factor in the solution of this question whenever it arises. But if unity of use is the controlling consideration, it can matter not how far in fact the pieces of land are separated. A factory may be in one county, its warehouse in another, its principal sales agency in a third; any interference with any of the three properties would of necessity be an interference with the unity of use

- 5 -

of them all, and, if appellant's position is sound, damages to the other two may be recovered for a taking of or an injury to the third. Indeed, this is but another way of phrasing the real contention of appellant, as quoted above from its brief, that business is property and when the taking by the state or its agencies interferes with, impairs, damages, or destroys a business, compensation may be recovered therefor. We are not to be understood as saying that this should not be the law when we do say this is not our law.'

"Some of the lands for which it was sought to claim damages by the construction of this highway are located more than nine miles from the right of way. The evidence showed that all of the noncontiguous lands were grazing in character and of no greater value than approximately $5 per acre. We appreciate that it is sometimes recognized as an exception to the general rule herein announced that where lands are so inseparably connected in the use to which they are applied that injury to or destruction of one must necessarily and permanently injure the other. (10 R.C.L. 157). This exception is without application here, as there was no preliminary foundation laid showing that these outlying grazing lands were permanently injured or destroyed. Accordingly, the trial court was in error in admitting testimony as to the damage to the lands which were not contiguous to the tract from which the right of way was taken." (Emphasis supplied).

This case is close in point to the instant case. It contains a definitive statement as to the application of what is now section 93-9912, R.C.M. 1947, in an eminent domain proceeding where depreciation damages are claimed to property which is not physically connected or contiguous to the tract from which the right of way is severed, but the landowner claims the "lands are so inseparably connected in the use to which they are applied that injury to or destruction of one must necessarily and permanently injure the other."

We will simply reiterate that rule as it applies to the instant case. Landowners in eminent domain actions are entitled to fair compensation for depreciation to the remainder of the parcel which results from the severance. The general rule requires that the land for which depreciation damages are sought be contiguous to that from which the severance is made. However, the landowner may claim as an exception to the general rule that the unity of use within an integrated operation to which he applies noncontiguous lands owned is of such a character that after severance they cannot be fully utilized to their best and most valuable use. This claim becomes

- 6 -

a question of fact for jury determination. Favorable consideration must be given the jury determination provided it is based on, and not contradictory to, competent and credible evidence supporting its holding.

This exception to the general requirement of contiguity which was discussed in the foregoing quotation from Bradshaw Land & Livestock Co. has been recognized by various authorities and in decisions by courts in federal and state jurisdictions. 27 Am Jur 2d Eminent Domain §317; 29A C.J.S. Eminent Domain §140; Anno. 6 ALR2d 1197, 1226; 4A Nichols on Eminent Domain, 3rd Ed. §14.31(1); 2 Lewis Eminent Domain, 3rd Ed. § 698.

Issue five does not bear a transcript reference in the brief as to alleged testimony on damages based on inconvenience. However, Mr. Renfro, the landowner, under cross-examination by the Commission's attorney, testified at length concerning depreciation based on water problems, hay, and animal units. This exchange occurred:

> "Q. Now then did you depreciate any of the grazing land lying east of the new highway? A. No, only for inconvenience, moving our----
>
> "Q. Did you have a figure for inconvenience? A. Yes, we have a figure for inconvenience on the whole operation.
>
> "Q. What was that figure, sir? A. $75,000.00".

Then followed more depreciation testimony concerning the water, the eight foot tube under the right of way and the impracticalities presented in watering stock after the taking. Then, this appears:

> "A. You have the main line which runs up the middle of your field and when you start your haying operation, you have to shut your pump off in order to put up your hay, and you couldn't run a hundred horse electric motor for two weeks to water, to pump a couple of tanks full of water to water your cattle. It just wouldn't be practical.
>
> "Q. Well, what monetary damage did you assign because of that? A. We figured $75,000.00 on the inconvenience and the damage to the place.
>
> "Q. Well, how many tons of feed did you lose? A. How many what?
>
> "Q. How many tons of feed did you lose, yes, on the east side of the take?

"MR. SMITH:  East or west?

"Q.  Pardon me, west of the Interstate highway, the area we have just been describing?  A.  Well, we would lose 400 head for approximately 3 months.

"Q.  400 head, 1200, divide that by 12, that's 100 animal unit months or animal units?  A.  Yes.

"Q.  And is that how you computed the $75,000.00?  A.  No, it would have been more than $75,000.00, this is just a conservative figure."  (Emphasis supplied).

It would be difficult to determine that the reference to "inconvenience" as used here and when viewed in the light of the testimony preceding and following concerning depreciation damage, could mean the kind of speculation or inconvenience generally understood to be noncompensalbe.  The testimony following the second reference would seem to indicate that the witness had in mind more than mere inconvenience in answering the question and arriving at a damage figure.  Perhaps one can say that the testimony of the owner is not artfully given, but it does appear clearly that the animal unit basis for depreciation was considered also.  Other witnesses, including qualified appraisers, testified to the unity of use of the parcels and the loss of animal units resulting from the take.

We find the fact determination made by the jury and the award based upon it are supported by competent and credible evidence.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 8 -